## W. K. SULLIVAN v. FIRST NATIONAL BANK OF FLATONIA.

Decided November 21, 1904.

**1.—Affidavit by Telephone.**

Affidavit required in judicial proceedings must be made by one personally appearing before the officer attesting it, and can not be sworn to over the telephone.

**2.—Same—Continuance.**

An application for continuance on account of the absence of a witness which purported to be sworn to by a party to the suit who, being sick and unable to attend, was called to the telephone by the clerk and made affidavit to the statements as read to him and authorized his attorney to sign his name, was not legally verified and was properly refused.

Appeal from the District Court of Fayette. Tried below before Hon. L. W. Moore.

*Duncan, Wolters & Lane,* for appellant.

*Brown & Lane,* for appellee.

GILL, ASSOCIATE JUSTICE.—This suit was brought by the appellee bank against the appellant, Sullivan, to recover upon two promissory notes executed by him aggregating the sum of $5644.05. In addition to this sum, together with interest and attorney's fee, judgment was sought for $1550.40, the aggregate amount paid out by the bank to keep alive three insurance policies on the life of Sullivan which had been assigned to the bank as collateral security for the notes. This latter sum was alleged to have been paid by the bank at the instance and request of Sullivan and it was agreed it should be charged to him. Sullivan does not question his liability on the notes, but resists the demand for the money paid out by the bank as premiums on the policies of insurance.

A trial before the court resulted in a judgment for the bank for its entire demand. Sullivan has appealed and assails the judgment upon two grounds: (1) because the facts do not support the judgment for the premiums; and (2) because the court erred in overruling defendant's motion for continuance.

We overrule the first point without discussion. The facts are ample to sustain the judgment.

The second objection arises upon the following facts: On the day the cause was last called for trial the defendant Sullivan was sick at his home about twenty miles from the courthouse. He was, however, represented by attorneys who announced not ready for trial and presented for the consideration of the court an application for continuance, in which it was alleged that one McCommon, the former president of the bank, was a witness on account of whose absence defendant could not safely go to trial. He had been duly served with process which he had not theretofore disobeyed. The materiality of his testimony was disclosed. The plaintiff's illness and absence were not stated as a ground for continuance, and the body of the application showed it was made by tele-

phone, affiant's name being signed by his attorney. This application contained the following jurat or certificate by the clerk of the court: "Sworn to and subscribed before me this 24th day of December, 1903, by calling defendant W. K. Sullivan to the telephone and asking him whether the contents of the foregoing application for continuance which I had heard read to him over the phone by J. F. Wolters were true, to which he under oath answered in the affirmative and stated he had authorized his attorney to sign his name for him."

The court refused to consider the application on the ground that it could not be properly sworn to over the telephone. Counsel for Sullivan excepted but made no further effort to procure a continuance of the cause.

Upon the trial it was shown by definite testimony that the premiums were paid by the bank in the pursuance of an agreement with Sullivan to that effect and judgment was rendered accordingly. It is clear the judgment should stand unless the court erred in declining to consider the application for continuance. The statute requires that it should be sworn to. Rev. Stat., art. 1276.

The affidavit need not be made by the party to the litigation in whose behalf it is to be offered, but may be made by his agent or attorney having knowledge of the facts. Doll v. Mundine, 84 Texas, 315. An attorney may make it upon information if he discloses the source and character of his information.

It thus appears that the application by which a continuance may be procured has not been hedged about with difficulties, but its preparation rendered easy even in the absence of the party most concerned. But it must nevertheless be sworn to, and this brings us to inquire into the formalities which must attend the administration of an oath.

It is necessary to the validity of every oath or affirmation not alone that it shall be binding upon the conscience of the affiant, but that it be made under the pains and penalties of perjury. The man without a conscience may make a valid affidavit, but that it be made under circumstances which subject the affiant to the pains and penalties of perjury in case the statements sworn to are false in a sine qua non.

We think, therefore, the law requires the affiant to be in the personal presence of the officer administering the oath. Not to the end that the officer may know him to be the person he represents himself to be, for it is not required that the affiant be identified or introduced or be personally known to the officer; but to the end that he be certainly identified as the person who actually took the oath. Oaths and affirmations according to the statute authorizing and governing them are taken before the officer authorized to administer them. Rev. Stat., art. 7, subdivs. 1, 2, 3.

It thus appears that the Legislature had in mind the meaning and history of an oath. In former times and especially in other states and countries certain forms were required which involved the presence of the affiant before the officer. Raising the right hand, touching the Bible, the Pentateuch or the Koran, and all of the other forms by which it was sought to bind the conscience of affiant, contemplated his presence before the officer.

Article 3 of the Revised Statutes requires that the oath shall be administered in the mode most binding upon the conscience of the individual taking the same, which of itself would in many cases necessitate the presence of the affiant.

It is said in 21 American and English Encyclopedia of Law, page 747, "To make the falsity of an oath perjury, it must be taken in the presence of an officer authorized to administer it." The language was quoted from O'Reilly v. The People, 86 N. Y., 154, in which the case of Case v. The People, 76 N. Y., 242, is reviewed, and in each it is ruled that an oath can be taken only in the presence of the officer. In the latter case it was held that if one wrote and signed an affidavit, the language of which recited the taking of the oath, and sent it to a notary for his certificate, who duly certified it had been sworn to, such facts would not support a conviction for perjury.

These authorities are of course not necessarily decisive of the point presented here, and we have been able to find no case in point. However, we can safely say that the affidavit in question was not made in the presence of or *before* the clerk who certified it. At the most he could say that a man twenty miles away whose voice he recognized had stated over the telephone that he authorized his signature to a writing which he had heard read, and had stated over the telephone that he swore the contents were true. But it is answered the statute does not expressly require the actual presence of the affiant, and it is enough that the clerk and the attorney recognized his voice. This brings us to a further consideration of the question with relation to a possible prosecution for perjury. In such a prosecution there must be established beyond a reasonable doubt the fact that an oath had been legally made, that the matter sworn to was false in fact, and that the defendant in the prosecution was the one who made the oath.

Now it may be true that one can be certainly identified by the sound of his voice, but that is not enough for the purposes of the rule in such a case. It may be true that the officer when he takes the affidavit of one well known to him might recognize his voice over the telephone and therefrom be able to testify that he took the oath and made the affidavit in issue. But it must be borne in mind that the law does not require the clerk or notary to be acquainted with one who becomes an affiant before them. A stranger may appear, sign an affidavit, and demand that the officer swear him and affix his jurat. In that case the officer certifies and can swear to no more than that the man who affixed the name to the affidavit swore to its truth. The name he signed may have been fictitious, but the individual swore to it as the clerk or notary certified, and he would be subject under that name or his true one to a prosecution for perjury.

Now if the contention of appellant is sound the rule must be laid down broadly, and whoever might demand the official jurat by his personal presence might also demand it over the telephone. Had it not so happened in this case that the clerk was acquainted with Sullivan and identified him by his voice, he could have done no more than certify that a man whom he did not know, but who represented himself to be Sullivan, authorized the name of Sullivan to be signed to the affidavit

and swore its contents were true. The clerk could not possibly identify him as the one making the affidavit if the question should afterwards arise. In a prosecution for perjury such testimony on the part of the clerk would not even raise an issue against the unknown affiant.

So we hold that not only is the personal presence of the affiant required to the end that by appropriate form and ceremony his conscience may be bound, but that it is required also to the end that the officer may see and know that the man who signs also swears. No modern business necessity requires the broadening of these rules. To allow the contention of appellant would be to open a broad door for fraud and imposition and hold out to the perpetrators a tempting chance for immunity from discovery and identification.

No error being found, the judgment of the trial court is affirmed.

*Affirmed.*