Steaven Ray WILLIAMS, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 12–01–00125–CR, 12–01–00126–CR.

Court of Appeals of Texas,
Tyler.

Jan. 16, 2002.

---

V. Antonio Aninao, Houston, for appellant.

Calvin A. Hartmann, Houston, for state.

Panel consisted of DAVIS, C.J., WORTHEN, J., and GRIFFITH, J.

LEONARD DAVIS, Chief Justice.

Appellant Steaven Ray Williams ("Appellant") pleaded true to the allegations in the State's motion to adjudicate guilt and nolo contendere to aggravated robbery after the trial court denied a motion to suppress his written statement. In five issues, Appellant challenges the trial court's denial of his motion to suppress. We reverse and remand.

### BACKGROUND

Appellant pleaded guilty to unauthorized use of a vehicle pursuant to a plea agreement in cause number 762223 in Harris County (appeal number 12–01–00125–CR), and the trial court assessed punishment at three years of deferred adjudication probation. Appellant was subsequently arrested in Harris County for aggravated robbery

and indicted in cause number 814815 (appeal number 12–01–00126–CR). After his arrest, Appellant gave a written statement in which he admitted his role in the robbery and described the episode in detail. The State then filed a motion to adjudicate guilt in the previous case (cause number 762223), based in part on Appellant's participation in the robbery.

Prior to trial, Appellant filed a motion to suppress in both cause numbers, seeking to suppress his written statement, which the trial court denied after a hearing. Appellant subsequently pleaded true to the allegations in the motion to adjudicate guilt and nolo contendere to aggravated robbery. In accordance with the plea agreement, the trial court assessed punishment at ten years of imprisonment for aggravated robbery and two years for unauthorized use of a vehicle. As part of the plea agreement, the court also gave Appellant permission in both cause numbers to appeal the denial of the motion to suppress. We consider the cases together on appeal.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review in which we give almost total deference to a trial court's determination of historical facts. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We afford the same amount of deference to the trial court's fact findings in questions involving the application of law to the facts, also known as mixed questions of law

and fact, if the resolution turns on an evaluation of the credibility and demeanor of witnesses. *Id.* However, we review de novo all mixed questions of law and fact not falling within that category. *Id.* As explained below, the disposition of this appeal turns on whether a knowing, voluntary, and intelligent waiver of Appellant's rights is shown on the face of his statement. Resolution of the issue requires us to construe the language of the statement and is not dependent on the facts of the case. We therefore decide the issue as a question of law and review the trial court's ruling de novo.

## ADMISSIBILITY OF APPELLANT'S STATEMENT

In his third issue, Appellant contends his statement is inadmissible because it does not conform to the requirements of TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2(b)(Vernon 1979). Specifically, Appellant contends the statement does not show on its face that he knowingly, intelligently, and voluntarily waived his rights prior to and during the making of the statement.[1] We agree.

The statement of an accused may be used as evidence against him if it appears the statement was freely and voluntarily made without compulsion or persuasion. TEX.CODE CRIM. PROC. ANN. art. 38.21 (Vernon 1979). When a written statement is obtained as a result of custodial interrogation, the statement must show *on its face* that the accused received the required warning.[2] TEX.CODE CRIM. PROC. ANN. art.

1. This issue addresses only the facial showing required by TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2(b). Whether Appellant's statement was voluntary is a separate issue.

2. No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

(a) the accused, prior to making the statement, either received from a magistrate the warning provided in Article 15.17 of this code or received from the person to whom the statement is made a warning that:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

38.22, § 2(a)(Vernon 1979). The statement must further show *on its face* that prior to and during the making of the statement, the accused knowingly, intelligently, and voluntarily waived the rights set out in section 2(a). Tex.Code Crim. Proc. Ann. art. 38.22, § 2(b).[3] The requirements of both subsections must be satisfied; otherwise, the statement is inadmissible. Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (Vernon 1979). However, section 2(b) neither prescribes language nor includes guidelines for drafting a provision that is sufficient to show the required waiver. As a result, the court of criminal appeals has considered what constitutes compliance with section 2(b).

In *Garcia v. State*, 919 S.W.2d 370 (Tex. Crim.App.1994), the appellant challenged the admissibility of his written statement, which included the warning set forth in section 2(a) as well as the following language immediately above the appellant's signature at the bottom of each page:

I have read each page of this statement consisting of [# omitted] page(s), each page of which bears my signature, and corrections, if any bear my initials, and I certify that the facts contained herein are true and correct. I further certify that I have made no request for the advice or presence of a lawyer before or during any part of this statement, nor at any time before it was finished did I request that this statement be stopped.

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

Tex.Crim. Proc. Ann. art. 38.22, § 2(a).

I also declare that I was not told or prompted what to say in this statement.

[Time, date and signature lines omitted.]

*Id.* at 379. The appellant's sole contention was that his statement did not show on its face that he had knowingly, voluntarily, and intelligently waived his rights as required by section 2(b). *Id.* at 378. The State, however, argued that the appellant demonstrated a waiver of his rights when he initialed each warning on the statement. *Id.*

On original submission, the court of criminal appeals held that the appellant did not affirmatively waive his rights by merely initialing each warning on the statement and further held that section 2(b) mandates an express waiver of each individual right. *Id.* On rehearing two years later in a plurality opinion, the court reversed its prior decision on whether an express waiver is necessary and held that substantial compliance with section 2(b) is sufficient. *Id.* at 387 (op. on reh'g).

To determine whether the appellant's statement showed substantial compliance, the court considered the totality of the statement. At the outset, the court noted the appellant received the required warnings and also stated that his initialing each of the five warnings was evidence that he received, read, and understood them. *Id.* at 386. In its analysis, the court noted the language in the paragraph quoted above by which the appellant acknowledged he

**3.** No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:

. . .

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

Tex.Code Crim. Proc. Ann. art. 38.22, § 2(b).

proceeded without requesting counsel or seeking to terminate the interview. *Id.* That additional language was considered evidence of reiteration that the appellant understood his rights and that he "knew what he was doing when he gave his statement." *Id.*

After determining the face of the statement showed the appellant understood his rights, the court held that the quoted paragraph "clearly is evidence" of a knowing, voluntary, and intelligent waiver of his right to counsel before or during his statement and of his right to terminate the interview at any time. *Id.* The fact that he initialed the provision pertaining to his right to remain silent, when considered with the language of the quoted paragraph, was deemed sufficient to show the necessary waiver of that right as well.[4] *Id.* Based on that analysis, the court held the language of the statement in question constituted substantial compliance with section 2(b). Despite its holding, however, the court noted the language in the statement before it was "by no means a model of clarity on this point" and "a close call." *Id.* at 387. The court also stated that the "clearly preferable practice is for a written statement to meet unambiguously the requirements of Section 2(b)" and included suggested language in its opinion.[5] *Id.*

 The court's heavy reliance on the quoted paragraph convinces us that the opinion on rehearing did not displace its original determination that no affirmative waiver was shown merely because the appellant initialed each warning on the statement. If the contrary were true, the court's analysis of the quoted paragraph would be unnecessary. Therefore, we conclude that provisions merely establishing the accused was warned cannot constitute substantial compliance with section 2(b). From the court's suggested language and its analysis of the appellant's statement, including the comments about its deficiencies, we further conclude that substantial compliance cannot occur absent language that specifically relates to the waiver of rights. That language, when read in the context of the entire statement, must show that the person making the statement intended to waive the rights set out in section 2(a).

In the case at bar, Appellant signed a document entitled "Statement of Person in Custody." Six numbered paragraphs appear at the top of the first page of the statement, and the first five of those paragraphs correspond in numbering and substance to the warning required by section 2(a). The sixth paragraph states: "I was further advised that prior to and during the making of a statement that I had to knowingly and voluntarily waive (Give up) the rights that I was advised that I had as set out above." A blank precedes each of the six paragraphs, and Appellant's handwritten initials appear in each blank. No other language pertaining to waiver is included in the statement. The trial court found that the language of Appellant's statement was in substantial compliance with section 2. Appellant disputes that determination and contends the recitation that he was advised he must waive his

---

4. As Judge Keller noted in her concurring opinion, section 2(a) identifies four rights susceptible to waiver by an accused: (1) the right to remain silent, (2) the right to a lawyer, (3) the right to have a lawyer appointed, and (4) the right to terminate the interview at any time. *Garcia,* 919 S.W.2d at 404 (Keller, J., concurring).

5. The court suggested that the following language be placed near or adjacent to the signature of the individual giving the statement: "I knowingly, voluntarily and intelligently waive the rights described above before and during the making of this statement." *Garcia,* 919 S.W.2d at 387.

rights, without more, is insufficient to show that he did so. We find no cases in which an appellate court has reviewed language similar to paragraph 6, and we therefore address Appellant's contention by examining his statement in light of the plain language of sections 2(a) and 2(b) and the principles we have derived from *Garcia.*[6]

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court addressed the admissibility of statements obtained during custodial interrogation and the procedures necessary to protect an individual's constitutional privilege against self-incrimination. After a comprehensive analysis of the privilege and its history, the Court held that the prosecution may not use statements stemming from a custodial interrogation of an accused unless it demonstrates the use of procedural safeguards that protect the privilege against self-incrimination. *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. The Court then prescribed a system of safeguards to make certain an accused is effectively apprised of his rights and assured a continuous opportunity to exercise them. *Miranda,* 384 U.S. at 467, 86 S.Ct. at 1624.

The procedure required by *Miranda* comprises two distinct components-warning and waiver. *Miranda,* 384 U.S. at 476, 86 S.Ct. at 1629. The warning informs the person in custody in clear and unequivocal terms of his right to remain silent and the consequences of forgoing it, his right to counsel, and his right to appointed counsel if he is indigent. *Miranda,* 384 U.S. at 467–69, 86 S.Ct. at 1624–25. The waiver is an intelligent, knowing, and voluntary relinquishment of the rights explained in the

warning. *Miranda,* 384 U.S. at 469, 86 S.Ct. at 1625, 1629.

Article 38.22 addresses the admissibility of both oral and written statements and codifies the safeguards prescribed by *Miranda.* The requirement that the face of the statement show both warning and waiver is in effect a requirement that the document contain formal recitations. 41 George E. Dix & Robert O. Dawson, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 13.32 (2001). The guidelines formulated in *Garcia* are to assist in determining whether specific recitations comport with legislative intent. *Garcia,* 919 S.W.2d at 386.

▇ In Appellant's statement, the sentence preceding the required warning on the first page recites that Appellant "was advised by Sgt. J. Burmester" of the rights or consequences set forth in the paragraphs that followed. Appellant initialed each of those paragraphs, including paragraph 6 that confirmed he "was further advised" he "had to knowingly and voluntarily waive" the rights he was "advised [he] had." As used in Appellant's statement, we conclude the word "advised" means informed or notified, THE AMERICAN HERITAGE DICTIONARY 13 (4th ed.2001), which is language consistent with warning as explained in *Miranda.* However, nothing in paragraph 6 addresses whether Appellant intentionally, knowingly, and voluntarily relinquished the rights of which he was informed or notified in the warning. As stated above, we believe *Garcia* stands for the proposition that language merely showing an individual was warned cannot constitute substantial compliance with section 2.[7] For that reason, we conclude that

---

6. Because the language of sections 2(a) and 2(b) is clear and unambiguous, we focus on the plain language and what the Legislature

has expressed. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).

7. Although not the basis of our holding, we are also concerned that paragraph 6 was in-

paragraph 6, standing alone, does not show that Appellant waived his rights.

■ We have not limited our review to the language in paragraph 6, however, but also examined the totality of Appellant's statement as permitted by *Garcia.* In so doing, we found no affirmative recitation that Appellant waived his rights and no language by which Appellant acknowledges he gave his statement without attempting to exercise them. In fact, we found no language at all relating to the issue of whether Appellant waived his rights. Because of that omission, the language of Appellant's statement as a whole falls far short of that examined in *Garcia* and cannot constitute substantial compliance with section 2.

The only suggestion on the face of the statement that Appellant *possibly* waived his rights is that he in fact gave the statement. The Court in *Miranda* addressed the issue of presuming waiver of the privilege against self-incrimination and emphasized such a presumption is impermissible under the following circumstances:

[A] valid waiver will not be presumed simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in *Carnley v. Cochran,* 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962) is applicable here:

Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.

*Miranda,* 384 U.S. at 475, 86 S.Ct. at 1628. From our reading of section 2, we believe the Legislature incorporated the rule expressed by the Court in *Miranda* and did not intend for us to presume waiver from a "silent statement." We therefore decline to do so.

■ We acknowledge that as a result of our decision, a statement determined by the trial court to have been voluntarily given is inadmissible. However, we are bound to faithfully follow the specific text that was adopted. *Boykin,* 818 S.W.2d at 785. In deciding the issue before us, we heed the admonition of the court of criminal appeals that "[w]here the statute is clear and unambiguous, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from such a statute." *Coit v. State,* 808 S.W.2d 473, 475 (Tex.Crim. App.1991). We therefore conclude that section 2 plainly declares the inadmissibility of a written statement that does not contain language of both warning and waiver. Because Appellant's statement is not in substantial compliance with that requirement as we interpret the court's decision in *Garcia,* we hold that the trial court erred in denying Appellant's motion to suppress. Accordingly, we sustain Appellant's third issue.

### Harm Analysis

Having determined that the trial court improperly denied Appellant's motion to suppress, we must conduct a harm analysis to determine whether the error requires reversal of the judgment. Tex.R.App. P. 44.2. If the error is constitutional, we

---

cluded as a part of the required warning and not in a separate section of the statement as suggested in *Garcia.* The placement of paragraph 6, along with the admonition that Appellant "had to" waive his rights prior to and

during his statement, could easily have caused Appellant to misunderstand the true nature of "waiver" and interpret the language as a directive.

reverse unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. Tex.R.App. P. 44.2(a). If the error is not constitutional, we disregard the error if it does not affect Appellant's substantial rights. Tex.R.App. P. 44.2(b).

Article 38.22 of the Texas Code of Criminal Procedure prescribes various requirements that must be satisfied before the statement of an accused is admissible at trial. The failure to meet those requirements does not mean the statement was necessarily obtained as a result of a legal or constitutional violation. *Davidson v. State*, 25 S.W.3d 183, 186 n. 4 (Tex.Crim. App.2000). Therefore, compliance with article 38.22 is not a constitutional issue, and we conduct the harm analysis required by rule 44.2(b). *Moore v. State*, 999 S.W.2d 385, 402 (Tex.Crim.App.1999), *cert. denied*, 530 U.S. 1216, 120 S.Ct. 2220, 147 L.Ed.2d 252 (2000) (applying non-constitutional harm analysis to violation of article 38.22).

To determine whether the error affects Appellant's substantial rights, we must decide whether the error had a substantial and injurious effect on the outcome of the case. *See King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). Applying that rule when, as here, a conviction occurs after a negotiated plea, we determine whether the error had a substantial and injurious effect or influence on Appellant's decision to enter pleas in both cases rather than proceed to trial. If we have grave doubt about whether the error affected the outcome, we must treat the error as if it did. *Fowler v. State*, 958 S.W.2d 853, 865 (Tex.App.-Waco 1997), *aff'd*, 991 S.W.2d 258 (Tex.Crim.App.1999). We make our determination from reviewing the entire record. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex.Crim.App.2001).

Appellant entered pleas in both cases after consultation with his attorney, and the record is predictably silent about the factors that contributed to his decision. In addition, the record contains little that will assist us in evaluating the strength of the State's case or learning what additional evidence would have been introduced against Appellant at trial. However, the record contains other information that provides insight into the dilemma Appellant faced once the trial court denied the motion to suppress.

From our review of the record, we note that Appellant gave his statement on the same day as his arrest and without the assistance of counsel. In his statement, Appellant admitted that he and two others, Buddha and Terry Lyn, had been going out at night stealing rims for about three weeks prior to the incident in question. On the evening of the robbery, Appellant stated that he called Buddha and asked him to take him to put some money down on a car. Buddha and Terry Lyn picked up Appellant and another male friend named McCray, who wanted to stop at a local shopping mall to look for some rims.

When they arrived at the mall, McCray spotted a Lexus and planned to "jack [the owner] up for the car so he could get the rims." Shortly after they spotted the car, McCray saw two males and a female approach the Lexus. McCray then jumped out and demanded the car. One of the men ran, and McCray shot his gun six or seven times. The female was wounded and died several hours later. When Appellant asked McCray why he shot the victim instead of walking off, McCray replied, "The dude shouldn't had ran. He should have give me the keys to the car." Appellant also stated that he asked McCray if he was going to see the victim in the hospital and, upon learning of her death, asked McCray if he was going to the funeral.

The record further shows that Appellant was subsequently indicted for aggravated

robbery, which is a first degree felony punishable by five years to ninety-nine years or life and a fine up to $10,000. Appellant had previously received three years of deferred adjudication probation on a charge of unauthorized use of a vehicle. Upon revocation, his possible sentence was from six months to two years in a state jail facility and a maximum fine of up to $10,000.

Appellant's statement was the only evidence he sought to suppress. At the hearing on the motion, Appellant's attorney forcefully argued the statement was inadmissible. He was careful to preserve error during the hearing and to secure permission to appeal the court's denial of the motion. After the court's ruling on the motion, Appellant reached a plea agreement with the State, which included agreed punishment and permission to appeal the court's ruling on the motion to suppress. At the hearing on the pleas, Appellant's attorney agreed that Appellant stipulated the witnesses would testify to the elements of aggravated robbery and that his statement would be admitted into evidence. However, the attorney also stated that the stipulation was signed subject to the objections raised in the motion to suppress.

In summary, Appellant admitted his role, albeit a relatively minor one, in an aggravated robbery that resulted in the death of one of the victims. He also admitted he participated in a series of thefts that occurred within three weeks prior to the robbery and revealed comments made after the robbery that seem rather flippant in light of the gravity of the offense. Those same comments could also be interpreted as showing a lack of remorse. He entered his pleas only after the trial court decided his statement was admissible, but

was granted permission to appeal the court's ruling pursuant to a plea bargain. Throughout the proceedings, Appellant's attorney reiterated his objections to the court's ruling on the motion to suppress and informed the court that Appellant's compliance with the plea agreement was subject to those objections.

When we consider the contents of the confession and the possible range of punishment for the aggravated robbery, we see little if any choice that Appellant had, once his statement was deemed admissible, but to accept the State's offer in both cases. From the severity of the possible punishment, the timing of Appellant's pleas, and the continued emphasis Appellant's attorney placed on the denial of the motion to suppress, we conclude the trial court's error had a substantial and injurious effect on Appellant's decision to enter pleas in both cases rather than proceed to trial. Therefore, the error is harmful and reversible error.

### CONCLUSION

Based upon our review of the record, we conclude that the trial court erred in denying Appellant's motion to suppress.[8] We further conclude that the trial court's error affects Appellant's substantial rights and is therefore reversible error. The judgment of the trial court is *reversed* and both causes are *remanded* to the trial court for proceedings consistent with this opinion.

---

**8.** Because our decision on Appellant's third issue is dispositive, we do not address the

other issues raised by Appellant. TEX.R.APP. P. 47.1.