# NO. 12-09-00460-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BRYAN JONATHAN AYLOR,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #1* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Bryan Jonathan Aylor appeals his conviction for driving while intoxicated (DWI). In his sole issue, he alleges that the trial court abused its discretion in denying his motion to suppress evidence. We reverse and remand.

## BACKGROUND

Shortly after midnight on February 3, 2009, Appellant, while driving his vehicle, collided with a street sweeping truck in Longview, Texas, and was injured as a result. The truck had its blue and yellow flashing lights activated at the time of the collision. When emergency medical technicians (EMTs) arrived, Officer Steven Burt of the Longview Police Department overheard Appellant admit to the EMTs that he had been drinking prior to the crash. Appellant was taken to a local hospital, where he admitted drinking two beers and two "shots." Officer Burt also overheard this admission, and he approached Appellant, read him the "DIC-24" warning, and placed him under arrest. Officer Burt asked Appellant to submit to a blood test, but he refused.

Officer Burt called Sergeant Seyer at the police department headquarters and dictated his observations to him. Sergeant Seyer prepared a written affidavit containing Officer Burt's

statements as an exhibit. He faxed the affidavit and supporting documentation to a magistrate, and then telephoned the magistrate and swore to the contents of the affidavit. The magistrate signed and issued a search warrant for the seizure of Appellant's blood. A sample of Appellant's blood was taken.

Appellant was charged by information with DWI. He filed a motion to suppress the blood specimen evidence, arguing in relevant part that the affidavit was not sworn to in the presence of the magistrate. At the suppression hearing, the parties stipulated that the warrant was secured via telephone and facsimile. Officer Burt was the only witness who testified at the hearing. After hearing Officer Burt's testimony and counsel's arguments, the trial court denied the motion to suppress.[1] Appellant obtained a negotiated plea agreement and pleaded *nolo contendere*. He was sentenced to 180 days of confinement, probated for fifteen months, conditioned in part upon Appellant's spending forty-eight hours in jail, plus a $600.00 fine. Appellant timely appealed.

<u>MOTION TO SUPPRESS EVIDENCE</u>

In his sole issue, Appellant argues that "[t]he trial court abused its discretion [by] denying the motion to suppress blood evidence where the search warrant used was obtained via telephone and facsimile and [Sergeant Seyer] never personally appeared before the magistrate or any other person authorized to administer oaths to swear to the facts contained therein . . . ."

**Standard of Review**

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application of law to fact questions that turn on an evaluation of credibility and demeanor. *See Amador*, 221 S.W.3d at 673. But when application of

---

[1] The trial judge who denied the motion to suppress also served as the magistrate who evaluated the affidavit and issued the search warrant ordering that a sample of Appellant's blood be taken and tested.

law to fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *See id.* We then review de novo the trial court's legal ruling. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In our analysis, we view the evidence in the light most favorable to the trial court's ruling. *Id.*

**Involuntary Blood Sample Warrant Requirements**

Under the exclusionary rule found in article 38.23 of the code of criminal procedure, evidence obtained in violation of the United States and Texas constitutions and federal and state laws is inadmissible against the accused. TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). The involuntary taking of a blood sample by law enforcement officers is a search and seizure within the meaning of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution. *Schmerber v. California*, 384 U.S. 757, 767, 86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908 (1966) (United States Constitution); *Smith v. State*, 557 S.W.2d 299, 301 (Tex. Crim. App. 1977) (Texas Constitution). A search warrant is therefore required to obtain a blood sample absent an emergency threatening destruction of evidence. *Schmerber*, 384 U.S. at 770; *Smith*, 557 S.W.2d at 301, 302.

Article 18.02 of the Texas Code of Criminal Procedure authorizes the issuance of a warrant to seize blood. *See* TEX. CODE CRIM. PROC. ANN. art. 18.02(10) (Vernon 2005) ("search warrant may be issued to search for and seize ... items"); *Gentry v. State*, 640 S.W.2d 899, 902 (Tex. Crim. App. 1982) (blood is "item" under Article 18.02). Before a warrant may issue, however, a sworn affidavit "setting forth substantial facts establishing probable cause" must be filed. TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (Vernon Supp. 2010). The purpose of the affidavit "is to memorialize the affiant's recitation of the facts, conclusions, and legal basis for the issuance of the search warrant." *Smith v. State*, 207 S.W.3d 787, 790 (Tex. Crim. App. 2006). The affidavit is valid if (1) the affiant personally swears to the facts contained in the written affidavit before the magistrate or officer authorized to administer oaths issuing the warrant, (2) the affiant signs the affidavit or other evidence proves he personally swore to the facts in it, and (3) the magistrate or officer administering the oath officially certifies the affidavit under his seal of office. *See* TEX. GOV'T CODE ANN. § 312.011(1) (Vernon 2005) ("Affidavit means a statement in writing of a fact or facts signed by the party making it, sworn to before an officer authorized to administer oaths, and officially certified to by the officer under his seal of office."); *see also Smith*, 207 S.W.3d at 791-92 (holding signature not necessarily

required if other evidence proves affiant swore to facts in affidavit); ***Hughes v. State***, No. 07-10-00096-CR, 2011 WL 561497, at *6-7 (Tex. App.–Amarillo Feb. 17, 2011, no pet. h.) (slip op.) (holding affidavit need not necessarily be sworn to in presence of magistrate as long as sworn to before an officer authorized to administer oaths). The purpose of the oath "is to call upon the affiant's sense of moral duty to tell the truth and to instill in him a sense of seriousness and responsibility." *See **Smith***, 207 S.W.3d at 790.

## Appellant's Argument[2]

The question raised by Appellant is whether Sergeant Seyer swore to the facts in the magistrate's presence, and particularly whether an oath administered solely over the telephone is sufficient to meet the presence requirement. Appellant claims the Texas Court of Criminal Appeals indicated that a document purporting to be an affidavit in support of a search warrant secured by telephone is not taken "before the magistrate," and consequently is not an affidavit. *See **Smith***, 207 S.W.3d at 792-93. In a footnote in ***Smith***, the court recognized that the federal rules and some states permit telephonic warrants and do not necessarily require that the affiant swear to the facts of the affidavit in the physical presence of the magistrate. *Id.* at 793 n.24. However, the court stated in ***Smith*** that

> [a]lthough the affiant's signature on an affidavit serves as an important memorialization of the officer's act of swearing before the magistrate, it is that act of swearing, not the signature itself, that is essential. It is important, too, that the law retain some flexibility in the face of technological advances. For example, the federal courts and some state courts, now permit telephonic search warrants, and one can foresee the day in which search warrants might be obtained via e-mail or a recorded video conference with a magistrate located many miles away. In a state as large as Texas, such innovations should not be foreclosed by the requirement of a signed affidavit if the officer's oath can be memorialized by other, equally satisfactory, means. *We leave those potential future changes to the Texas Legislature . . . .*

*Id.* at 792-93 (internal footnotes omitted) (emphasis added). It is this dicta upon which Appellant relies to support his contention. It is true that, by these statements, the court implies that purely

---

[2] It is undisputed that the affidavit here was in writing. *See* TEX. CODE CRIM. PROC. ANN. art. 2.26(b-1) (Vernon Supp. 2010) ("An electronically transmitted document [such as a document transmitted by facsimile] is a written document for all purposes . . . ."). Likewise, it is undisputed that the affidavit was signed by Sergeant Seyer. *See id.* art. 2.26(b) ("An electronically transmitted document . . . received by a court . . . in a criminal matter is considered signed if a digital signature is transmitted with the document). Neither party alleges that Sergeant Seyer failed to swear to the facts contained in the affidavit, or that the magistrate failed to properly certify the affidavit.

4

telephonic oaths are not permissible in Texas. But the court in **Smith** was not confronted with the issue Appellant raises in the instant case.

**Presence Requirement before Officer Authorized to Administer Oaths**

It has long been the general rule in the civil context that an affiant must swear to an affidavit in the physical presence of the officer administering the oath, and that an oath taken solely by telephone is insufficient. *See **Sullivan v. First Nat'l Bank***, 37 Tex. Civ. App. 228, 229-31, 83 S.W. 421, 422-23 (Tex. Civ. App. 1904, no writ).

The rule in **Sullivan** has been applied in criminal cases. *See **Lowry v. State***, 164 Tex. Crim. 178, 182-83, 297 S.W.2d 848, 850-51 (Tex. Crim. App. 1956) (op. on reh'g), *superseded by statute on other grounds as stated in **Hardy v. State***, 213 S.W.3d 916 (Tex. Crim. App. 2007). Although in **Hardy** the court of criminal appeals recognized that **Lowry** had been overruled, the holding in **Hardy** was predicated on the enaction of Section 37.07 of the penal code. *See **id.*** That section provides that

> [i]t is no defense to prosecution [for perjury or aggravated perjury] that a document was not sworn to if the document contains a recital that it was made under oath, the declarant was aware of the recital when he signed the document, and the document contains the signed jurat of a public servant authorized to administer oaths.

TEX. PENAL CODE ANN. § 37.07(b) (Vernon 2003). Thus, the court held in **Hardy** that, based on the enaction of Section 37.07, it was not a defense to a perjury prosecution that the defendant was not in the presence of the officer administering the oath as long as the requirements of Section 37.07 were met. *See **Hardy***, 213 S.W.3d at 916. Nothing in **Hardy** suggests that its holding applies to anything other than a perjury prosecution. *See **id.***

Since **Hardy**, the issue before us here has been raised in the Dallas court of appeals, but that court declined to decide it because the good faith exception to the warrant requirement applied. *See **Swenson v. State***, No. 05-09-00607-CR, 2010 WL 924124, at *2-4 (Tex. App.–Dallas Mar. 16, 2010, no pet.) (mem. op., not designated for publication). After the parties in the instant case filed their briefs, the Amarillo court of appeals addressed the issue in part. *See **Hughes***, No. 07-10-00096-CR, 2011 WL 561497, at *6-7. In **Hughes**, the officer compiling the affidavit personally swore to the facts in the affidavit in the physical presence of another officer who was a notary public and notarized the affidavit. ***Id.*** The officer then sent the affidavit to the magistrate by facsimile. ***Id.***, at *1. These facts persuaded the court of appeals that the affidavit met the requirements of Texas law. ***Id.***,

5

at *6-7.   Stated another way, **Hughes** stands for the proposition that an affiant need only swear to the facts of the affidavit in the physical presence of an officer authorized to administer oaths.   As long as that occurs, the fact that the information contained in the affidavit is relayed to the magistrate for the first time by telephone or facsimile does not necessarily invalidate the affidavit for failure to meet the presence requirement.   *See* ***id.***

**The Result**

The current state of Texas law then, as alluded to in the above quoted dicta by the court of criminal appeals in **Smith**, is that a physical, personal appearance is necessary, either before the magistrate, or before someone who is qualified to administer oaths.[3]   *See* ***Lowry***, 297 S.W.2d at 850-51 (citing ***Sullivan,*** 83 S.W. at 422-23); ***Hughes***, No. 07-10-00096-CR, 2011 WL 561497, at *6-7.   Therefore, we conclude that an affiant must be physically present in front of the magistrate or officer authorized to administer oaths when swearing to the facts in his affidavit to support a search warrant.   We further conclude that where the oath was taken solely over the telephone and not physically in front of any officer authorized to administer oaths, the presence requirement is not met. In the instant case, the oath was administered by the magistrate to Sergeant Seyer by telephone.   The record does not show that Sergeant Seyer took the oath in front of some other officer authorized to administer oaths, and the affidavit is not notarized.   Moreover, the State did not argue at the trial court, and does not argue here, that the arrest or any evidence seized during the search was obtained by the officers acting in good faith reliance on the warrant.   *See* ***Swenson v. State***, 2010 WL 924124, at *2-4.   Consequently, we cannot conclude from the record before us that the presence requirement was satisfied or that compliance with the presence requirement was excused.   Accordingly, we hold that the trial court erred in concluding that the warrant was valid and in overruling Appellant's motion to suppress.

**Harm Analysis**

Having concluded the trial court erred, we must conduct a harm analysis to determine whether the error calls for reversal of the judgment.   TEX. R. APP. P. 44.2.   The harm analysis for the erroneous admission of evidence obtained in violation of the Fourth Amendment is Rule 44.2(a)'s constitutional standard.   ***Hernandez v. State***, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).   Under

---

[3] The State does not cite any case holding that anything less than an oath taken in the physical presence of an officer authorized to administer oaths will satisfy the statutory requirements for an affidavit.

this standard, we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction or punishment. TEX. R. APP. P. 44.2(a).

When a defendant has pleaded guilty or *nolo contendere* to the offense charged after obtaining a pretrial ruling denying his motion to suppress evidence that was later determined to be erroneous, the appellate court's determination of harm focuses on whether the error contributed to his decision to plead guilty. *See* **Holmes v. State**, 323 S.W.3d 163, 174 (Tex. Crim. App. 2009) (op. on reh'g); **Sanchez v. State**, 98 S.W.3d 349, 357-58 (Tex. App.–Houston [1st Dist.] 2003, pet. ref'd) ("[O]ur focus in determining harm is on whether the error had [an] . . . effect on appellant's decision to plead guilty in the first place."); **Williams v. State**, 84 S.W.3d 243, 250 (Tex. App.–Tyler 2002), *vacated in part*, No. PD-0322-02 (Tex. Crim. App. June 26, 2002)[4] ("When . . . a conviction occurs after a negotiated plea, we determine whether the error had [an] . . . effect or influence on [a]ppellant's decision to enter [a plea of guilty or *nolo contendere*] rather than proceed to trial").[5]

More specifically, in a constitutional error case resulting from a plea of *nolo contendere*, we must reverse the case unless we can determine beyond a reasonable doubt that the trial court's erroneous denial of a defendant's motion to suppress did not contribute to his decision to enter a plea of *nolo contendere*, which in turn led to his conviction and punishment. *See* **Holmes**, 323 S.W.3d at 174 (holding court could not determine beyond reasonable doubt that trial court's error did not contribute to decision to plead guilty because soon after denial of pretrial motions, defendants pleaded no contest, indicating trial court's erroneous ruling was indeed contributing factor in defendants' convictions and punishments); *see also* **Hale v. State**, 139 S.W.3d 418, 422 (Tex. App.–Fort Worth 2004, no pet.) (holding defendant harmed by erroneous denial of pretrial motion to exclude when he pleaded guilty after denial because record on appeal did not include trial to review

---

[4] The Texas Court of Criminal Appeals vacated the original opinion of this court in part and remanded the case to us with instructions to dismiss for lack of jurisdiction. *See* **Williams v. State**, No. 12-01-00126-CR, 2002 WL 1822326, at *1 (Tex. App.–Tyler Aug. 7, 2002, no pet.) (per curiam) (mem. op., not designated for publication).

[5] The error in both **Sanchez** and **Williams** was nonconstitutional, which explains the slightly different nature of the inquiry in those cases. That is, when a defendant pleads guilty as a result of erroneous nonconstitutional error under Rule 44.2(b), we examine whether the error had a "substantial and injurious effect" on the defendant's decision to plead. In a constitutional error case where the defendant pleads guilty as a result of the error, we must reverse unless we can determine beyond a reasonable doubt that the error did not contribute to the defendant's decision to enter a guilty plea or plead *nolo contendere*. *Compare* **Sanchez**, 98 S.W.3d at 357-58, *and* **Williams**, 84 S.W.3d at 250, *with* **Holmes**, 323 S.W.3d at 174.

7

under traditional harmless error standard; thus appellate court could not determine beyond reasonable doubt that erroneous ruling did not contribute to guilty plea leading to conviction).   The inquiry is not whether the nonexcludable evidence is legally sufficient to support the conviction.   *Anthony v. State*, 954 S.W.2d 132, 136 (Tex. App.–San Antonio 1997), *overruled on other grounds by **Gonzales v. State***, 67 S.W.3d 910 (Tex. Crim. App. 2002) (concluding that in conducting harm analysis where defendant pleaded guilty after denial of his motion to suppress, "it is irrelevant whether sufficient independent evidence existed to support [defendant's] guilty plea").

Here, the trial court denied Appellant's motion to suppress, and Appellant pleaded *nolo contendere* shortly thereafter, resulting in his conviction for the charged offense.   The record does not disclose the results from the test of Appellant's blood specimen, and there was no trial due to Appellant's plea.   Therefore, the appellate record is sparse for purposes of determining whether the trial court's ruling was used against Appellant.   *See **Holmes***, 323 S.W.3d at 172.[6]   However, Appellant's plea of *nolo contendere* within a short time after the trial court's denial of his motion to suppress indicates that the erroneous ruling was a contributing factor in Appellant's conviction and punishment.   *See **id.*** at 174.   Under the record before us, we cannot determine beyond a reasonable doubt that the trial court's erroneous denial of Appellant's motion to suppress did not contribute to his decision to plead *nolo contendere*.

Accordingly, we sustain Appellant's sole issue.

---

[6] In *Anthony*, the court analyzed *McKenna* and *Kraft*, as did the court of criminal appeals in *Holmes*, and stated that the rationale for this type of harm analysis when a defendant pleads guilty after his motion to suppress is denied is that

> [t]he application of a harmless error analysis [in which an appellate court could consider evidence independent of a judicial confession to support a guilty or *nolo contendere* plea] is misplaced because the existence of a judicial confession or tainted evidence, which has been found to be inadmissible for trial, can "somehow [be] used" by the State to the detriment of the [A]ppellant.   An example of how this evidence can be "used against" the defendant is in the plea bargaining process.   " '[T]he more relevant evidence Appellant knows could be marshalled against him, the more preferable would appear his option to relinquish constitutional rights of trial and confrontation in exchange for a favorable punishment recommendation.' "   It is the use of evidence, sought by the appellant to be suppressed, that violates the Appellant's Fifth Amendment rights.   In applying a harmless error analysis, the court would be speculating that the evidence which Appellant did not seek to suppress would have inevitably led to a conviction after trial.   In doing this, the court would effectively be denying the [A]ppellant the right to decide whether to plead or move forward to a trial.

*Anthony*, 954 S.W.2d at 136 (quotations in original) (internal citations omitted); *see also **Holmes***, 323 S.W.3d at 172-74.

## DISPOSITION

Having sustained Appellant's sole issue, we *reverse* the judgment of the trial court and *remand* this cause for a new trial.

## BRIAN HOYLE
Justice

Opinion delivered April 29, 2011.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)