NO. 07-10-00096-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 17, 2011

DAVID HUGHES, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

FROM THE COUNTY COURT AT LAW NO. 1 OF LUBBOCK COUNTY;

NO. 2008-451,814; HONORABLE LARRY B. "RUSTY" LADD, JUDGE

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION**

Appellant, David Hughes, was convicted of the offense of driving while intoxicated (DWI)[1] and sentenced to 180 days in jail; the jail time was suspended and appellant was placed on community supervision for 18 months. Appellant raises seven issues in his appeal. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 49.04 (West 2003).

Factual and Procedural Background

On July 6, 2008, Lubbock Police Officer James Woody was working the "STEP"[2] program in downtown Lubbock. At approximately 1:30 a.m., Woody was working in the "Depot District"[3] when he first observed appellant. Woody was at the intersection of 19th and Texas Avenue facing north. Woody observed appellant driving south toward 19th on Buddy Holly Avenue. Woody saw appellant make a wide right turn by not turning as close to the right hand curb as practicable. Woody described appellant's turn as going into the farthest south of the west bound lanes on 19th as opposed to the north most west bound lane, the one closest to the curb. As appellant passed by Woody's location, Woody observed appellant failing to drive in a single marked lane. Woody proceeded to turn his emergency lights on and stop appellant for the two traffic offenses he observed.[4] After stopping appellant, Woody approached appellant's vehicle and identified himself while advising appellant of the reason for the stop.

Upon walking up to the driver's side of appellant's car, Woody could smell the odor of an alcoholic beverage coming from the interior of the car. Woody had appellant step from the car and asked him to perform the standard field sobriety tests. After completing the tests, Woody placed appellant under arrest for DWI and asked if appellant would provide a specimen of his breath for analysis. Appellant refused to

[2] "STEP" stands for Specific Traffic Enforcement Program and is a grant funded program to enforce specific traffic laws.

[3] The "Depot District" was described as an entertainment district in downtown Lubbock containing a number of restaurants and bars.

[4] The activation of Woody's emergency lights also activated his in-car video recording device.

provide a breath specimen. Woody then took appellant to University Medical Center's Emergency Room, and detained appellant in a lock up at that location, while he prepared an application for a blood search warrant. After Woody filled out the affidavit for a search warrant and swore to it before a notary public, the affidavit was faxed to a Lubbock County Judge, acting as a magistrate. Subsequently, a search warrant signed by the judge and an order for assistance directed to the hospital was faxed back to Woody. A nurse then drew the blood sample from appellant and gave it to Woody. That same night, Woody delivered the blood sample to the Texas Department of Public Safety regional laboratory in Lubbock. Appellant was booked into the Lubbock County Jail and charged with DWI.

Prior to trial, appellant's trial counsel filed a motion to suppress the blood test, a motion to suppress the initial stop and arrest, and a motion to suppress the results of the horizontal gaze nystagmus (HGN) test. The trial court heard evidence and argument on these motions on October 28, 2009. The trial court overruled the motions to suppress the initial stop, arrest, and the results of the HGN test on that day. Further, the trial court requested briefing from all parties on the motion to suppress the blood test results. Subsequently, the trial court overruled the motion to suppress the results of the blood test on December 15, 2009.

Appellant proceeded to trial and the jury found him guilty of the offense of DWI. Appellant was sentenced to 180 days in the Lubbock County Jail with a jury recommendation that the jail time be suspended. The trial court placed appellant on community supervision for a period of 18 months. This appeal followed.

Appellant brings forth seven issues. Appellant contends that the trial court erred: 1) by denying the motion to suppress the initial stop because there was no reasonable suspicion that an offense was being or about to be committed, 2) by denying the motion to suppress the blood test because there was no probable cause to justify the issuance of the warrant, 3) by allowing the oaths in support of the search warrant to be administered telephonically, 4) by finding the search was not unreasonable where no exigent circumstances existed, 5) by admitting the blood test results because of the unsanitary conditions where the blood draw was made, 6) because the State's closing argument constituted egregious error, 7) because inclusion of appellant's requested Texas Code of Criminal Procedure article 38.23 jury issue did not negate the error in denying the motion to suppress. We will consider these issues in the order presented.

Initial Stop

Appellant's first issue contends that the trial court erred in overruling the motion to suppress the evidence acquired after the initial stop because the officer who made the stop did not have sufficient articulable facts that rose to the level of reasonable suspicion to support stopping appellant.

Standard of Review

We apply a bifurcated standard of review to the trial court's ruling on a motion to suppress. See Valtierra v. State, 310 S.W.3d 442, 447 (Tex.Crim.App. 2010). We must give almost total deference to the trial court's determination of historical facts. See id. The trial judge is the sole trier of fact and the judge of the credibility of any witnesses' testimony and the weight to be assigned to that testimony. See id. When we review an

4

application-of-law-to-fact question not turning on the credibility and demeanor of the witnesses, we review the trial court's rulings *de novo.* See Wiede v. State, 214 S.W.3d.17, 25 (Tex.Crim.App. 2007). When the record is silent as to the reasons for the trial judge's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions, we imply the necessary findings that would support the trial court's ruling if evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. See State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex.Crim.App. 2008).

Law

Initially, we note that the evidence reflects that the initial stop in question was made without a warrant, which satisfies the initial burden of a defendant to rebut the presumption of proper police conduct when challenging a search or seizure. See Torres v. State, 182 S.W.3d 899, 902 (Tex.Crim.App. 2005). The burden then shifts to the State to demonstrate that the government acted reasonably. See id. Torres dealt with an application of the Fourth Amendment to the United States Constitution while in the case before the Court, appellant, along with a Fourth Amendment challenge, also alleges a violation of Article I, Section 9 of the Texas Constitution.[5] Appellant has not argued that article I, section 9 affords him greater protection that is distinct from that of the Fourth Amendment, and, therefore, we treat them as providing the same protection and will consider them jointly. See Franks v. State, 241 S.W.3d 135, 141 (Tex.App.—

---

[5] Even though appellant's issue contains a reference to the "State Constitution," we do not find any citations to cases expressly dealing with alleged violations of Article I, Section 9 of the Texas Constitution.

Austin 2007, pet. ref'd). <u>Hulit v. State</u>, 982 S.W.2d 431, 436 (Tex.Crim.App. 1998), concluded that, if an appellant makes a state constitutional argument, then the proper inquiry is "the reasonableness of the search or seizure under the totality of the circumstances."

<u>Analysis</u>

At the suppression hearing, Woody testified that he first observed appellant headed toward 19th Street. Appellant stopped at the intersection of 19th Street and Buddy Holly Avenue and turned right onto 19th Street. Woody said that while making the right turn, appellant turned into the south most lane of 19th Street, as opposed to the north most lane, which would have been as close as practicable to the curb. <u>See</u> Tᴇx. Tʀᴀɴsᴘ. Cᴏᴅᴇ Aɴɴ. § 545.101(a) (West 1999).[6] Woody also testified that from his vantage point it was obvious that appellant intended to turn into the far left lane after completing the right turn. This would have been the south most lane of 19th Street. According to Woody, this meant appellant did not turn as close as practicable to the curb, and, therefore, violated the statute. Appellant then drove past Woody's location and Woody pulled into the lane behind appellant's vehicle. While driving behind appellant, Woody testified that he observed appellant fail to drive in a single marked lane. At this time, Woody decided to stop appellant for the two traffic offenses he had observed. It is from this testimony that appellant bases his claim that the trial court erred in overruling his motion to suppress.

---

[6] Tex. Transp. Code. § 545.101(a) provides that "to make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway."

6

Appellant complains that the trial court lacked specific, articulable facts that rose to the level of reasonable suspicion to support the initial stop. To support this proposition, appellant analyzes the two traffic offenses that the officer testified to seeing appellant commit, individually. That is to say, appellant's analysis is not based on the totality of the circumstances, but rather takes a piece-meal approach. See Neal v. State, 256 S.W.3d 264, 280 (Tex.Crim.App. 2008). Further, the analysis put forth by appellant keys in on what offenses the officer subjectively thought appellant had committed and not what the evidence objectively reveals. See Garcia v. State, 43 S.W.3d 527, 530 (Tex.Crim.App. 2001) (officer's subjective motives and justification for the stop is irrelevant to the validity of the stop). Finally, appellant's analysis does not follow the chronology of events; rather, he analyzes the second offense first. This is apparently done because appellant considers this the weaker of the reasons stated to stop appellant.

We view this issue as turning upon the credibility of the officer's testimony about whether or not appellant made a wide right turn. Woody testified that appellant made that wide turn while appellant testified he did not. However, appellant's analysis would have this Court second guess the trial court about a matter that turned on the credibility of the witness. This we cannot do, as we are cautioned to give almost total deference to the trial court's determination of historical facts that turn on the credibility of the witness. Valtierra, 310 S.W.3d at 447. After hearing this testimony, the trial court overruled appellant's motion to suppress. The trial court did not file any written findings of fact, therefore, we imply the necessary findings that would support the trial court's ruling if evidence, when viewed in the light most favorable to the trial court's ruling,

supports those findings.  See Garcia-Cantu, 253 S.W.3d at 241.  Since we find there is evidence to support the trial court's implied finding of a violation of a traffic law, a wide right turn, there are specific articulable facts upon which to base a temporary detention of appellant.  See State v. Patterson, 291 S.W.3d 121, 123 (Tex.App.—Amarillo 2009, no pet.) (holding that a traffic violation can constitute reasonable basis for detention).  Accordingly, appellant's first issue is overruled.

## Issuance of Search Warrant

Appellant's second issue contends that the trial court committed reversible error when it refused to suppress the evidence of the blood analysis based upon the issuance of a search warrant.  This is so, according to appellant, for a number of reasons which we will answer in turn.  Appellant first contends that the affidavit in support of the issuance of the warrant did not contain specific enough information to rise to the level of probable cause.  Next, appellant contends that the affiant did not personally appear before the magistrate who issued the warrant and that such failure to appear before the magistrate was a violation of appellant's rights under the constitutions of the United States and the State of Texas.

### Standard of Review

When a trial court is reviewing the magistrate's determination of probable cause to support the issuance of a search warrant, there are no credibility determinations, rather the trial court is constrained to the four corners of the affidavit.  Hankins v. State, 132 S.W.3d 380, 388 (Tex.Crim.App. 2004).  Accordingly, when we review the magistrate's decision to issue a warrant, we apply a highly deferential standard.  See

Rodriguez v. State, 232 S.W.3d 55, 61 (Tex.Crim.App. 2007). We apply this deferential standard because we have a constitutional preference for searches to be conducted pursuant to a warrant as opposed to warrantless searches. Id. (citing Illinois v. Gates, 462 U.S. 213, 234-37, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable cause determination. Gates, 462 U.S. at 236. We are also reminded that reviewing courts should not invalidate a search warrant by interpreting the affidavit in a hyper-technical manner, rather than in a common sense manner. Id.; Rodriguez, 232 S.W.3d at 59.

Probable Cause

Probable cause exists when the totality of the facts and circumstances presented to the magistrate support the conclusion that there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location. Flores v. State, 319 S.W.3d 697, 702 (Tex.Crim.App. 2010). Our duty is not to act as a rubber stamp for the magistrate or the trial court, however, the decision of the magistrate should carry the day in a doubtful or marginal case, even when the reviewing court might reach a different conclusion in a *de novo* review. Id.

Our review of the affidavit shows that Officer Woody was, on the day in question, a commissioned peace officer employed by the Lubbock Police Department. Woody requested the issuance of a search warrant to search for evidence in human blood. Further, on July 6, 2008, at approximately 1:37 a.m., Woody initiated a traffic stop of appellant. The affidavit lists the traffic offenses for which appellant was stopped.

Woody then states that, while talking to appellant, he smelled an odor of an alcoholic beverage and observed that appellant's speech was slurred, his eyes were bloodshot and heavy, his balance when standing was swayed, and his walking appeared to have a staggering gait to it. The affidavit then relates that appellant advised Woody, "I can't get a D.W.I." The affidavit goes on to state that appellant was requested to take certain field sobriety tests and appellant agreed to do so. The results of the tests are stated in the affidavit. As to each test given, the affidavit begins "I/ ___ observed" and then the results. This is read to indicate that the officer filing out the affidavit gave the tests personally and observed the various matters described for each test. The affidavit then states that, as a result of observing appellant during the traffic stop and while performing the field sobriety tests, the officer formed the opinion that appellant was intoxicated. The officer also informs the magistrate that he requested a specimen of appellant's breath, but appellant refused to give the specimen. Finally, the officer requests that the magistrate issue a search warrant and swears to the affidavit before a notary public.

With the information contained in the affidavit, we must now answer the question of whether or not there is probable cause, giving deference to the original decision of the magistrate, to support the magistrate's decision to issue the warrant in question. In our opinion, there is sufficient probable cause. When this affidavit is viewed in a non-technical, common sense manner, there is more than a fair probability or substantial chance that evidence of a crime will be found within the blood of appellant. Id. The affidavit describes the results of the standard field sobriety tests, and based upon those results, a commissioned peace officer can form the opinion that appellant was

intoxicated. There is nothing within the four corners of the affidavit that points to anything other than probable cause to support the magistrate's determination. Hankins, 132 S.W.3d at 388.

Appellant contends that the affidavit is insufficient for a number of different reasons. Initially, he contends that the affidavit does not state specific articulable facts to authorize a stop of appellant. Such an analysis misplaces the analysis of a motion to suppress based upon a lack of reasonable suspicion with the analysis of probable cause to issue a search warrant. The issue of reasonable suspicion was properly submitted to the trial court in the form of a motion to suppress and has been decided adversely to appellant. Nowhere in article 18.01(b), the search warrant article, can appellant find support for his contention regarding reasonable suspicion to stop him. Rather, appellant simply asserts that the affidavit in question should have specifically set forth the evidence supporting the initial stop because article 18.01(b) uses the phrase "unless sufficient facts are presented." See TEX. CODE CRIM. PROC. ANN. art. 18.01(b) (West Supp. 2010).[7] The requirements of an "evidentiary," article 18.02(10), search warrant are covered in article 18.01(c). See arts. 18.01(c), 18.02(10). Art. 18.01(c) simply provides that the sworn affidavit required by art. 18.01(b) must set forth sufficient facts to establish probable cause that "a specific offense has been committed."[8] Art. 18.01(c). The affidavit in question clearly sets forth the offense of DWI and, by doing so, meets the requirements of art. 18.01(c). Id. The failure to detail

---

[7] Further reference to the Texas Code of Criminal Procedure Annotated shall be by reference to "article ___" or "art. ___."

[8] The article further enumerates other requirements not germane to this argument.

11

the operative facts of the initial stop is not fatal to the magistrate's overall determination that probable cause to issue the warrant existed because the issue is not reasonable suspicion to detain appellant, rather it is probable cause to authorize the issuance of a search warrant following the detention.

Appellant continues his attack on the warrant by contending that paragraph 3 of the affidavit is insufficient because it said the item to be possessed and concealed was blood that constituted evidence and that belonged to appellant, but did not state how that particular blood draw would constitute evidence of DWI. The essence of this and the remaining arguments of appellant is to request us to hyper-technically construe the language of the affidavit. See Rodriguez, 232 S.W.3d at 59. Such an analysis denies this Court, as the reviewing court, the right to interpret the affidavit in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. Id. at 61. The affidavit states that the suspected offense is DWI and that a specimen of appellant's breath had been requested and refused. The affidavit then states that appellant is the person arrested, and that blood is the property being concealed. Further, the affidavit states that the property constitutes evidence. It takes no great leap of faith or unknown intuitiveness to realize that the magistrate knows that the blood is being requested to analyze it for the presence of blood alcohol for use in a prosecution for DWI. This is a reasonable inference the magistrate can draw from this affidavit. Id.

Appellant then contends that the affidavit is insufficient because, in paragraphs 6, 7, and 8, there are blanks which generally have something in front of a blank followed by the specific observation or field sobriety tests. Appellant's complaint is that, "There

are two circled hash marks written at the beginning of each blank. No description of what this symbol means or what it represents appears in the affidavit." Further, appellant complains that there is no explanation as to how any of the observations and field sobriety tests listed in the paragraphs constitute signs of intoxication.

Again, the essence of appellant's argument is to granulate and to analyze the affidavit in a hyper-technical manner so as to reduce the overall impact of the affidavit on the issue of probable cause. We, on the other hand, are told to use the totality of the circumstances in reviewing the determination of probable cause. See Flores, 319 S.W.3d at 702.

Our review of the first complaint reveals, regarding those strange slash marks, that they are nothing more than the letter "I" followed by a slash mark, indicating that the officer who prepared the affidavit made the following observations personally and did not get the information from another officer. The complaint about the relationship between the observations and field sobriety tests and intoxication go to the weight of such evidence and possibly the credibility of a witness so testifying, but not to the issue before the magistrate, which was probable cause. From this affidavit, there is more than sufficient evidence presented to the magistrate to demonstrate a fair probability or substantial chance that contraband or evidence of a crime will be found at the location the warrant is directed to, the appellant's blood. Id.

Personal Appearance

Appellant further contends that the affidavit is insufficient because the affiant did not personally appear before the magistrate. Appellant contends that, since the printed form of the warrant contained the language that the affiant "did heretofore this day subscribe and swore to said affidavit before me" which the evidence demonstrates that the affiant, Woody, actually swore to the affidavit before Officer Opaitz and not the magistrate, the affidavit constitutes perjury and should not be used to issue a warrant.

Appellant's contention is simply wrong and the law he provides to support this position is neither accurate nor controlling. First, appellant asserts that art. 18.01(b) requires an affidavit in support of a search warrant to be sworn to. Art. 18.01(b). This is accurate. However, the record supports the fact that the affidavit was sworn to as required. Nonetheless, appellant, without citation or authority, asserts that Texas law requires the affiant to personally appear before the individual administering the oath. The implication being left is that since Woody did not appear before the magistrate, the oath is invalid. However, Woody did appear before a notary and swore to the affidavit; therefore, the affidavit in support of the warrant was sworn to in the manner required by the statute. Id. So, we are left with the question what, if any, are the consequences of the language in the warrant stating that the affiant appeared and swore to the affidavit before the magistrate personally?

Initially, we observe that art. 18.01(b) simply requires that a sworn affidavit be filed in every instance where a warrant is requested. Id. Next, we note that, when the Texas Court of Criminal Appeals was faced with the issue of a search warrant affidavit

14

that had been sworn to but not signed, the Court held that the lack of a signature of the affiant did not vitiate the legal effect of the warrant based upon that affidavit. Smith v. State, 207 S.W.3d 787, 793 (Tex.Crim.App. 2006). From this we conclude that the extra wording contained in the warrant issued based upon Woody's affidavit did not impact the legality of the warrant.

Having concluded that there was probable cause to issue the warrant and that the additional language contained in the warrant did not impact the warrant's validity, we overrule appellant's second issue.

## Administration of the Oath

Appellant's third issue is that the trial court committed egregious error because a warrant was issued based upon the sworn oath in support of the affidavit being submitted by telephone or facsimile. Appellant's contention is not supported in the record. The oath was given by Officer Opaitz, acting in his capacity as a notary public, to Woody. The additional language contained in the warrant appears to be a part of a standard form that is not applicable to this particular fact pattern. Thus, we are faced with a request to invalidate a warrant based upon an alleged error that does not impact the probable cause finding made by the magistrate. Time and again we are counseled to look at the totality of the circumstances, and not base our review on a technical application of the law. See Schornick v. State, No. 02-10-00183-CR, 2010 Tex.App. LEXIS 9007, at *5-*7 (Tex.App.—Fort Worth Nov. 4, 2010, no pet. h.) (memo. op., not designated for publication) (holding that purely technical discrepancies do not automatically vitiate the validity of a search warrant) (citing Green v. State, 799 S.W.2d

15

756, 759 (Tex.Crim.App. 1990)). Further, the case cited by appellant, Smith, 207 S.W.3d 787, does not stand for the proposition put forth by appellant. Smith determined that an affidavit filed without the signature of the affiant, which had in fact been sworn to, would support the search warrant subsequently issued. Id. at 793. Judge Cochran's opinion does, in fact, contain the statements referred to by appellant; however, these statements are not necessary to the holding of the Court and are, therefore, dicta; furthermore, the opinion does not support appellant's basic proposition. Id. at 792-93. We, therefore, overrule appellant's third issue.

Exigent Circumstances

Appellant's fourth issue contends that there were no exigent circumstances that warranted the intrusion of a blood draw, and that the police did not use the least intrusive means to obtain the evidence required. As a result, appellant contends that the ruling of the trial court that the search was not unreasonable was egregious error.

First, the cases submitted by appellant to support this contention are not cases in which search warrants had issued. Rather, they were uniformly warrantless searches. See Schmerber v. California, 384 U.S. 757, 758-59, 88 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Preston v. United States, 376 U.S. 364, 368, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). There is a decided preference in the law for a search warrant. See Rodriguez, 232 S.W.3d at 61 (citing Gates, 462 U.S. at 236). Also, exigent circumstances are one of the exceptions to the warrant requirement of the constitutions of Texas and the United States. See Gutierrez v. State, 221 S.W.3d 680, 685 (Tex.Crim.App. 2007). Therefore, it is clear that there is no requirement for exigent circumstances to authorize

a blood draw based upon a warrant issued after finding probable cause. Therefore, appellant's fourth issue is overruled.

## Unsanitary Blood Draw Conditions

Appellant's fifth issue contends that the trial court erred in admitting the blood evidence because of the unsanitary conditions where the blood draw occurred. Appellant does not cite the Court to a portion of the record where an objection was made to the blood draw because of the lack of sanitary conditions. We have reviewed the record and do not find such an objection. Further, we have reviewed the motion to suppress the blood evidence and it does not object to the blood test evidence based upon the lack of sanitary conditions of the blood draw.

Appellant's complaint has not been preserved for appeal. See TEX. R. APP. P. 33.1(a), Fuller v. State, 253 S.W.3d 220, 232 (Tex.Crim.App. 2008). Accordingly, appellant's issue on appeal has been waived. Id. Therefore, we overrule appellant's fifth issue.

## Closing Argument of the State's Attorney

Appellant's sixth issue contends that the State committed egregious error when, during final arguments, the State made an improper jury argument. The gist of appellant's position is that the State's attorney struck at appellant through his characterization of appellant's trial attorney. Although appellant cites the Court to the portion of the record where the alleged transgression occurred, he does not cite the

Court to any portion of the record where trial counsel objected to the alleged improper jury argument.

Because appellant failed to object to the argument, nothing has been preserved for appeal. <u>See</u> TEX. R. APP. P. 33.1(a), <u>Fuller</u>, 253 S.W.3d at 232. As in the previous issue, appellant's issue on appeal has been waived. <u>Id</u>. Appellant's sixth issue is, therefore, overruled.

Article 38.23 Instruction

In appellant's final issue, he contends that the inclusion of the art. 38.23 instruction in the jury charge did not negate the error of the trial court in refusing to grant the pretrial motion to suppress the initial stop and detention. This issue appears to be nothing more than an attempt to recast the very first issue regarding the reasonable suspicion to stop appellant initially. We have already ruled against appellant on this issue. Additionally, the record reveals that appellant never lodged any objection to the art. 38.23 instruction given to the jury. Therefore, to the extent appellant's issue is an attempt to complain about the trial court giving the instruction, the same has been waived because appellant did not preserve the issue. <u>See</u> TEX. R. APP. P. 33.1(a), <u>Fuller</u>, 253 S.W.3d at 232. Accordingly, appellant's final issue is overruled.

## Conclusion

Having overruled each of appellant's issues, the judgment of the trial court is affirmed.

Mackey K. Hancock
Justice

Publish.