NO.
12-09-00460-CR

            

IN THE COURT OF
APPEALS 

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

BRYAN
JONATHAN AYLOR,                         §                 APPEAL FROM THE

APPELLANT

 

V.                                                                         §                 COUNTY
COURT AT LAW #1

 

THE STATE OF TEXAS,

APPELLEE                                                        §                 GREGG
COUNTY, TEXAS

                                                        
                                         

MEMORANDUM OPINION

Bryan Jonathan Aylor appeals his
conviction for driving while intoxicated (DWI).  In his sole issue, he alleges
that the trial court abused its discretion in denying his motion to suppress
evidence.  We reverse and remand.

 

Background

Shortly
after midnight on February 3, 2009, Appellant, while driving his vehicle,
collided with a street sweeping truck in Longview, Texas, and was injured as a
result.  The truck had its blue and yellow flashing lights activated at the
time of the collision.  When emergency medical technicians (EMTs) arrived,
Officer Steven Burt of the Longview Police Department overheard Appellant admit
to the EMTs that he had been drinking prior to the crash.  Appellant was taken
to a local hospital, where he admitted drinking two beers and two “shots.” 
Officer Burt also overheard this admission, and he approached Appellant, read
him the “DIC-24” warning, and placed him under arrest.  Officer Burt asked
Appellant to submit to a blood test, but he refused. 

Officer
Burt called Sergeant Seyer at the police department headquarters and dictated
his observations to him.  Sergeant Seyer prepared a written affidavit
containing Officer Burt’s statements as an exhibit.  He faxed the affidavit and
supporting documentation to a magistrate, and then telephoned the magistrate
and swore to the contents of the affidavit.  The magistrate signed and issued a
search warrant for the seizure of Appellant’s blood.  A sample of Appellant’s
blood was taken.

Appellant
was charged by information with DWI.  He filed a motion to suppress the blood
specimen evidence, arguing in relevant part that the affidavit was not sworn to
in the presence of the magistrate.  At the suppression hearing, the parties
stipulated that the warrant was secured via telephone and facsimile.  Officer
Burt was the only witness who testified at the hearing.  After hearing Officer
Burt’s testimony and counsel’s arguments, the trial court denied the motion to
suppress.[1] Appellant obtained a negotiated
plea agreement and pleaded nolo contendere.  He was sentenced to 180
days of confinement, probated for fifteen months, conditioned in part upon
Appellant’s spending forty-eight hours in jail, plus a $600.00 fine.  Appellant
timely appealed.

 

Motion
to Suppress Evidence

            In
his sole issue, Appellant argues that “[t]he trial court abused its discretion
[by] denying the motion to suppress blood evidence where the search warrant
used was obtained via telephone and facsimile and [Sergeant Seyer] never
personally appeared before the magistrate or any other person authorized to
administer oaths to swear to the facts contained therein . . . .”

Standard
of Review

We
review a trial court’s ruling on a motion to suppress evidence under a
bifurcated standard of review.  Amador v. State, 221 S.W.3d 666,
673 (Tex. Crim. App. 2007).  In reviewing the trial court’s decision, we do not
engage in our own factual review.  See Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990).  The trial judge is the sole trier of
fact and judge of the credibility of the witnesses and the weight to be given
their testimony.  Wiede v. State, 214 S.W.3d 17, 24-25 (Tex.
Crim. App. 2007).  Therefore, we give almost total deference to the trial
court’s rulings on (1) questions of historical fact, even if the trial court’s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application of law to fact questions that turn on an
evaluation of credibility and demeanor.  See Amador, 221 S.W.3d
at 673.  But when application of law to fact questions do not turn on the
credibility and demeanor of the witnesses, we review the trial court’s rulings
on those questions de novo. See id. We then review de novo the
trial court’s legal ruling.  See State v. Kelly, 204 S.W.3d 808,
818 (Tex. Crim. App. 2006).  In our analysis, we view the evidence in the light
most favorable to the trial court’s ruling.  Id.

Involuntary
Blood Sample Warrant Requirements

Under
the exclusionary rule found in article 38.23 of the code of criminal procedure,
evidence obtained in violation of the United States and Texas constitutions and
federal and state laws is inadmissible against the accused.  Tex. Code Crim. Proc. Ann. art.
38.23(a) (Vernon 2005).  The involuntary taking of a blood sample by law
enforcement officers is a search and seizure within the meaning of the Fourth
Amendment to the United States Constitution and Article I, Section 9 of the
Texas Constitution.  Schmerber v. California, 384 U.S. 757, 767,
86 S. Ct. 1826, 1834, 16 L. Ed. 2d 908 (1966) (United States Constitution); Smith
v. State, 557 S.W.2d 299, 301 (Tex. Crim. App. 1977) (Texas Constitution). 
A search warrant is therefore required to obtain a blood sample absent an
emergency threatening destruction of evidence.  Schmerber, 384
U.S. at 770; Smith, 557 S.W.2d at 301, 302.

Article
18.02 of the Texas Code of Criminal Procedure authorizes the issuance of a
warrant to seize blood.  See Tex.
Code Crim. Proc. Ann. art. 18.02(10) (Vernon 2005) (“search warrant may
be issued to search for and seize ... items”); Gentry v. State,
640 S.W.2d 899, 902 (Tex. Crim. App. 1982) (blood is “item” under Article
18.02).  Before a warrant may issue, however, a sworn affidavit “setting forth
substantial facts establishing probable cause” must be filed. Tex. Code Crim. Proc. Ann. art.
18.01(b) (Vernon Supp. 2010).  The purpose of the affidavit “is to memorialize
the affiant’s recitation of the facts, conclusions, and legal basis for the
issuance of the search warrant.”  Smith v. State, 207 S.W.3d 787,
790 (Tex. Crim. App. 2006).  The affidavit is valid if (1) the affiant
personally swears to the facts contained in the written affidavit before the
magistrate or officer authorized to administer oaths issuing the warrant, (2)
the affiant signs the affidavit or other evidence proves he personally swore to
the facts in it, and (3) the magistrate or officer administering the oath
officially certifies the affidavit under his seal of office.  See Tex. Gov’t Code Ann. § 312.011(1)
(Vernon 2005) (“Affidavit means a statement in writing of a fact or facts
signed by the party making it, sworn to before an officer authorized to
administer oaths, and officially certified to by the officer under his seal of
office.”); see also Smith, 207 S.W.3d at 791-92 (holding
signature not necessarily required if other evidence proves affiant swore to
facts in affidavit); Hughes v. State, No. 07-10-00096-CR, 2011 WL
561497, at *6-7 (Tex. App.–Amarillo Feb. 17, 2011, no pet. h.) (slip op.)
(holding affidavit need not necessarily be sworn to in presence of magistrate
as long as sworn to before an officer authorized to administer oaths).  The purpose
of the oath “is to call upon the affiant’s sense of moral duty to tell the
truth and to instill in him a sense of seriousness and responsibility.”  See
Smith, 207 S.W.3d at 790.

Appellant’s
Argument[2]

            The
question raised by Appellant is whether Sergeant Seyer swore to the facts in
the magistrate’s presence, and particularly whether an oath administered solely
over the telephone is sufficient to meet the presence requirement.  Appellant
claims the Texas Court of Criminal Appeals indicated that a document purporting
to be an affidavit in support of a search warrant secured by telephone is not
taken “before the magistrate,” and consequently is not an affidavit.  See Smith,
207 S.W.3d at 792-93.  In a footnote in Smith, the court
recognized that the federal rules and some states permit telephonic warrants
and do not necessarily require that the affiant swear to the facts of the
affidavit in the physical presence of the magistrate.  Id. at 793
n.24.  However, the court stated in Smith that 

 

[a]lthough the
affiant’s signature on an affidavit serves as an important memorialization of
the officer’s act of swearing before the magistrate, it is that act of
swearing, not the signature itself, that is essential.  It is important, too,
that the law retain some flexibility in the face of technological advances. 
For example, the federal courts and some state courts, now permit telephonic
search warrants, and one can foresee the day in which search warrants might be
obtained via e-mail or a recorded video conference with a magistrate located
many miles away.  In a state as large as Texas, such innovations should not be
foreclosed by the requirement of a signed affidavit if the officer’s oath can
be memorialized by other, equally satisfactory, means.  We leave those
potential future changes to the Texas Legislature . . . .

 

 

Id. at 792-93 (internal footnotes
omitted) (emphasis added). It is this dicta upon which Appellant relies to
support his contention.  It is true that, by these statements, the court implies
that purely telephonic oaths are not permissible in Texas.  But the court in Smith
was not confronted with the issue Appellant raises in the instant case. 

Presence
Requirement before Officer Authorized to Administer Oaths

It
has long been the general rule in the civil context that an affiant must swear
to an affidavit in the physical presence of the officer administering the oath,
and that an oath taken solely by telephone is insufficient.  See Sullivan
v. First Nat’l Bank, 37 Tex. Civ. App. 228, 229-31, 83 S.W. 421, 422-23
(Tex. Civ. App. 1904, no writ).  

The
rule in Sullivan has been applied in criminal cases.  See Lowry
v. State, 164 Tex. Crim. 178, 182-83, 297 S.W.2d 848, 850-51 (Tex.
Crim. App. 1956) (op. on reh’g), superseded by statute on other grounds as
stated in Hardy v. State, 213 S.W.3d 916 (Tex. Crim. App. 2007). 
Although in Hardy the court of criminal appeals recognized that Lowry
had been overruled, the holding in Hardy was predicated
on the enaction of Section 37.07 of the penal code.  See id. That
section provides that 

 

[i]t is no
defense to prosecution [for perjury or aggravated perjury] that a document was
not sworn to if the document contains a recital that it was made under oath,
the declarant was aware of the recital when he signed the document, and the
document contains the signed jurat of a public servant authorized to administer
oaths.

 

 

Tex. Penal Code Ann. § 37.07(b) (Vernon 2003).  Thus, the court held in Hardy
that, based on the enaction of Section 37.07, it was not a defense to a perjury
prosecution that the defendant was not in the presence of the officer
administering the oath as long as the requirements of Section 37.07 were met.  See
Hardy, 213 S.W.3d at 916.  Nothing in Hardy suggests
that its holding applies to anything other than a perjury prosecution.  See id. 


            Since
Hardy, the issue before us here has been raised in the Dallas
court of appeals, but that court declined to decide it because the good faith
exception to the warrant requirement applied.   See Swenson v. State,
No. 05-09-00607-CR, 2010 WL 924124, at *2-4 (Tex. App.–Dallas Mar. 16, 2010, no
pet.) (mem. op., not designated for publication).  After the parties in the
instant case filed their briefs, the Amarillo court of appeals addressed the
issue in part.  See Hughes, No. 07-10-00096-CR, 2011 WL 561497,
at *6-7.  In Hughes, the officer compiling the affidavit
personally swore to the facts in the affidavit in the physical presence of
another officer who was a notary public and notarized the affidavit.  Id. 
The officer then sent the affidavit to the magistrate by facsimile.  Id.,
at *1.  These facts persuaded the court of appeals that the affidavit
met the requirements of Texas law.  Id., at *6-7.  Stated another
way, Hughes stands for the proposition that an affiant need only
swear to the facts of the affidavit in the physical presence of an officer
authorized to administer oaths.  As long as that occurs, the fact that the
information contained in the affidavit is relayed to the magistrate for the first
time by telephone or facsimile does not necessarily invalidate the affidavit
for failure to meet the presence requirement.  See id.   

The
Result

The
current state of Texas law then, as alluded to in the above quoted dicta by the
court of criminal appeals in Smith, is that a physical, personal
appearance is necessary, either before the magistrate, or before someone who is
qualified to administer oaths.[3]  See Lowry,
297 S.W.2d at 850-51 (citing Sullivan, 83 S.W. at 422-23);
Hughes, No. 07-10-00096-CR, 2011 WL 561497, at *6-7.  Therefore, we
conclude that an affiant must be physically present in front of the magistrate
or officer authorized to administer oaths when swearing to the facts in his
affidavit to support a search warrant.  We further conclude that where the oath
was taken solely over the telephone and not physically in front of any officer
authorized to administer oaths, the presence requirement is not met.  In the
instant case, the oath was administered by the magistrate to Sergeant Seyer by
telephone.  The record does not show that Sergeant Seyer took the oath in front
of some other officer authorized to administer oaths, and the affidavit is not
notarized.  Moreover, the State did not argue at the trial court, and does not
argue here, that the arrest or any evidence seized during the search was
obtained by the officers acting in good faith reliance on the warrant.  See Swenson
v. State, 2010 WL 924124, at *2-4.  Consequently, we cannot conclude
from the record before us that the presence requirement was satisfied or that
compliance with the presence requirement was excused.  Accordingly, we hold
that the trial court erred in concluding that the warrant was valid and in
overruling Appellant’s motion to suppress.

Harm
Analysis

Having
concluded the trial court erred, we must conduct a harm analysis to determine
whether the error calls for reversal of the judgment.  Tex. R. App. P. 44.2.  The harm analysis for the erroneous
admission of evidence obtained in violation of the Fourth Amendment is Rule 44.2(a)’s
constitutional standard.  Hernandez v. State, 60 S.W.3d 106, 108
(Tex. Crim. App. 2001).  Under this standard, we must reverse the trial court’s
judgment unless we determine beyond a reasonable doubt that the error did not
contribute to Appellant’s conviction or punishment.  Tex. R. App. P. 44.2(a).  

When
a defendant has pleaded guilty or nolo contendere to the offense charged
after obtaining a pretrial ruling denying his motion to suppress evidence that
was later determined to be erroneous, the appellate court’s determination of
harm focuses on whether the error contributed to his decision to plead guilty. 
See Holmes v. State, 323 S.W.3d 163, 174 (Tex. Crim. App. 2009)
(op. on reh’g); Sanchez v. State, 98 S.W.3d 349, 357-58 (Tex.
App.–Houston [1st Dist.] 2003, pet. ref'd) (“[O]ur focus in determining harm is
on whether the error had [an] . . . effect on appellant’s decision to plead
guilty in the first place.”); Williams v. State, 84 S.W.3d 243,
250 (Tex. App.–Tyler 2002), vacated in part, No. PD-0322-02 (Tex. Crim.
App. June 26, 2002)[4] (“When . . . a conviction occurs
after a negotiated plea, we determine whether the error had [an] . . . effect
or influence on [a]ppellant’s decision to enter [a plea of guilty or nolo
contendere] rather than proceed to trial”).[5]

More
specifically, in a constitutional error case resulting from a plea of nolo
contendere, we must reverse the case unless we can determine beyond a
reasonable doubt that the trial court’s erroneous denial of a defendant’s
motion to suppress did not contribute to his decision to enter a plea of nolo
contendere, which in turn led to his conviction and punishment.  See Holmes,
323 S.W.3d at 174 (holding court could not determine beyond reasonable doubt
that trial court’s error did not contribute to decision to plead guilty because
soon after denial of pretrial motions, defendants pleaded no contest,
indicating trial court’s erroneous ruling was indeed contributing factor in
defendants’ convictions and punishments); see also Hale v. State,
139 S.W.3d 418, 422 (Tex. App.–Fort Worth 2004, no pet.) (holding defendant
harmed by erroneous denial of pretrial motion to exclude when he pleaded guilty
after denial because record on appeal did not include trial to review under
traditional harmless error standard; thus appellate court could not determine
beyond reasonable doubt that erroneous ruling did not contribute to guilty plea
leading to conviction).  The inquiry is not whether the nonexcludable evidence
is legally sufficient to support the conviction.  Anthony v. State,
954 S.W.2d 132, 136 (Tex. App.–San Antonio 1997), overruled on other grounds
by Gonzales v. State, 67 S.W.3d 910 (Tex. Crim. App. 2002) (concluding
that in conducting harm analysis where defendant pleaded guilty after denial of
his motion to suppress, “it is irrelevant whether sufficient independent
evidence existed to support [defendant’s] guilty plea”).

Here,
the trial court denied Appellant’s motion to suppress, and Appellant pleaded nolo
contendere shortly thereafter, resulting in his conviction for the
charged offense.  The record does not disclose the results from the test of
Appellant’s blood specimen, and there was no trial due to Appellant’s plea.  Therefore,
the appellate record is sparse for purposes of determining whether the trial
court’s ruling was used against Appellant.  See Holmes, 323
S.W.3d at 172.[6]
 However,
Appellant’s plea of nolo contendere within a short time after the trial
court’s denial of his motion to suppress indicates that the erroneous ruling
was a contributing factor in Appellant’s conviction and punishment.  See id.
at 174.  Under the record before us, we cannot determine beyond a reasonable
doubt that the trial court’s erroneous denial of Appellant’s motion to suppress
did not contribute to his decision to plead nolo contendere. 

Accordingly,
we sustain Appellant’s sole issue.

 

Disposition

            Having
sustained Appellant’s sole issue, we reverse the judgment of the
trial court and remand this cause for a new trial.

 

                                                                   Brian
Hoyle

                                                                      
Justice

 

 

 

Opinion delivered April 29, 2011.

Panel consisted
of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLISH)









[1] The
trial judge who denied the motion to suppress also served as the magistrate who
evaluated the affidavit and issued the search warrant ordering that a sample of
Appellant’s blood be taken and tested. 





[2] It is
undisputed that the affidavit here was in writing.  See Tex. Code Crim. Proc. Ann. art.
2.26(b-1) (Vernon Supp. 2010) (“An electronically transmitted document [such as
a document transmitted by facsimile] is a written document for all purposes . .
. .”).  Likewise, it is undisputed that the affidavit was signed by Sergeant
Seyer.  See id. art. 2.26(b) (“An electronically transmitted
document . . . received by a court . . . in a criminal matter is considered
signed if a digital signature is transmitted with the document).  Neither party
alleges that Sergeant Seyer failed to swear to the facts contained in the
affidavit, or that the magistrate failed to properly certify the affidavit.





[3] The State does
not cite any case holding that anything less than an oath taken in the physical
presence of an officer authorized to administer oaths will satisfy the
statutory requirements for an affidavit. 

 





[4] The Texas
Court of Criminal Appeals vacated the original opinion of this court in part and
remanded the case to us with instructions to dismiss for lack of jurisdiction.  See
Williams v. State, No. 12-01-00126-CR, 2002 WL 1822326, at *1 (Tex. App.–Tyler
Aug. 7, 2002, no pet.) (per curiam) (mem. op., not designated for publication).





 

[5] The error in
both Sanchez and Williams was nonconstitutional,
which explains the slightly different nature of the inquiry in those cases. 
That is, when a defendant pleads guilty as a result of erroneous
nonconstitutional error under Rule 44.2(b), we examine whether the error had a
“substantial and injurious effect” on the defendant’s decision to plead.  In a
constitutional error case where the defendant pleads guilty as a result of the
error, we must reverse unless we can determine beyond a reasonable doubt that the
error did not contribute to the defendant’s decision to enter a guilty plea or
plead nolo contendere.  Compare Sanchez, 98 S.W.3d at
357-58, and Williams, 84 S.W.3d at 250, with Holmes,
323 S.W.3d at 174.

                        





[6] In Anthony,
the court analyzed McKenna and Kraft, as did the
court of criminal appeals in Holmes, and stated that the
rationale for this type of harm analysis when a defendant pleads guilty after
his motion to suppress is denied is that 

 

[t]he
application of a harmless error analysis [in which an appellate court could
consider evidence independent of a judicial confession to support a guilty or nolo
contendere plea] is misplaced because the existence of a judicial
confession or tainted evidence, which has been found to be inadmissible for
trial, can “somehow [be] used” by the State to the detriment of the [A]ppellant.
 An example of how this evidence can be “used against” the defendant is in the
plea bargaining process.  “ ‘[T]he more relevant evidence Appellant knows could
be marshalled against him, the more preferable would appear his option to
relinquish constitutional rights of trial and confrontation in exchange for a
favorable punishment recommendation.’ ”  It is the use of evidence, sought by
the appellant to be suppressed, that violates the Appellant’s Fifth Amendment
rights.  In applying a harmless error analysis, the court would be speculating
that the evidence which Appellant did not seek to suppress would have
inevitably led to a conviction after trial.  In doing this, the court would
effectively be denying the [A]ppellant the right to decide whether to plead or
move forward to a trial. 

 

Anthony, 954 S.W.2d at
136 (quotations in original) (internal citations omitted); see also Holmes,
323 S.W.3d at 172-74.