**Affirmed and Memorandum Opinion filed August 14, 2012.**



In The

# Fourteenth Court of Appeals

———————————

## NO. 14-11-00633-CR

———————————

## DONALD ERIC WINGARD, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 12th District Court**
**Grimes County, Texas**
**Trial Court Cause No. 16,816**

## MEMORANDUM OPINION

Appellant, Donald Eric Wingard, Jr., pled guilty to the second-degree felony of possession of a controlled substance and was sentenced to five years in prison. He retained the right to appeal the trial court's denial of his pretrial motion to suppress all evidence resulting from a traffic stop during which the police found illegal drugs on his person and inside his truck. On appeal, appellant argues that the trial court erred in denying his motion to suppress because the evidence was the fruit of three allegedly illegal police actions: (1) stopping appellant without a reasonable suspicion that he was engaged in criminal activity; (2) frisking him without a reasonable suspicion that he had a weapon;

and (3) exceeding the permissible scope of a weapons search by reaching under appellant's waistband and seizing several bags of drugs hidden there. We conclude that the police acted legally in all of these respects and consequently affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Late on the afternoon of May 18, 2010, Deputies Steven Siracasa and Wesley Male of the Grimes County Sherriff's Department were on patrol in Navasota, Texas. The deputies pulled into a Sonic drive-thru and spotted appellant's black pickup truck coming out of the drive-thru at the same time. About a week earlier, Siracasa (along with the other deputies in the department) had been told by Lieutenant Blake Jarvis that the owner of this particular truck had been observed engaging in a number of illegal drug transactions. The deputies followed appellant as he left the drive-thru and pulled into the parking lot of a Wal-Mart down the street. Deputy Male watched appellant from inside a car dealership next door. Male saw appellant stop his car in the middle of the parking lot, get out, and talk with a woman for about 15 seconds before driving off again. Male, who has been involved with narcotics investigations for many years, "thought it to be a narcotics transaction."

Siracasa and Male continued to follow appellant as he left the parking lot of the Wal-Mart and turned right onto Navasota's main street. Male noticed appellant make a "wide right" into one of the center lanes of the street rather than turning into the closest lane. The deputies followed appellant down the main road as he continued under an overpass and turned left onto a feeder road. After driving some distance along the right lane of the feeder road, appellant veered left—across the left lane of the feeder—and got onto the highway entrance ramp. Appellant failed to use his left turn signal when he entered the highway. The deputies began signaling for appellant to stop, and appellant pulled over to the side of the entrance ramp. Due to the highway traffic, Deputy Siracasa ordered appellant to stand to the rear of the vehicle. According to Deputy Siracasa,

2

[appellant] appeared to be nervous.   When I would talk to him he wouldn't
make eye contact, he would shuffle his feet back and forth, appeared to have
a kind of jerky motion about his body as if something—he was nervous about
something.

Deputy Male also said that "[appellant]'s nervousness was a little bit more than I would suspect for just a normal little traffic stop."   Deputy Male also testified that he saw a white speck on appellant's mouth that looked like narcotics.   Asked about this, appellant stated that he had just eaten at Sonic.

While Deputy Male waited with appellant, Deputy Siracasa returned to the patrol car and ran appellant's information and driver's license through a police database.   He found that appellant had a history of drug arrests.   Deputy Siracasa asked appellant if he had ever been arrested in the past, and appellant responded that he had been arrested for narcotics.   Deputy Siracasa explained that among his duties was "to intercept illegal flow of contraband" and asked "if there was anything in the vehicle that [Deputy Siracasa] should be concerned about that would be illegal."   Appellant answered that there was not. Deputy Siracasa asked to search appellant's vehicle, and appellant responded, "I don't see why you need to, but if you want to, go ahead.   It's not a problem."

Before conducting the vehicle search, Deputy Siracasa asked appellant to turn around, explaining that he "was going to conduct a pat down of the outer part of his clothing for weapons for his safety and mine, just to make sure he didn't have anything that was going to, you know, poke me, stick me, shoot me."   Appellant was wearing loose-fitting white shorts—loose enough that his wallet could be discerned when he put it in his pocket—and a weapon was not immediately visible.   Nonetheless, Deputy Siracasa testified that he felt the patdown was necessary for both his and appellant's safety.   As the patdown began, appellant tried to reach into his pockets, prompting Deputy Siracasa to tell him to stop.   According to Male, when a suspect reaches into his pockets,

"it raises—it heightens you a little bit, because you don't know if they're
trying to grab— you know, what's in their pocket, whether they have a knife,
a gun or what could be in there, some type of weapon.   It's such—it's a

3

safety issue. You want to make sure that they don't reach in there because you don't know what they can pull out."

During the patdown, Deputy Siracasa felt a bulge under appellant's right waist band. Although the bulge did not feel like a weapon, Deputy Siracasa asked appellant what it was. Appellant responded that it was "speed," which is a slang term for methamphetamines ("meth"), and told Deputy Siracasa, "Go ahead, you can go in there and get it." Deputy Male reached under appellant's waistband and pulled out two baggies of a crystalline substance that later testing revealed to be meth. Inside the truck, the deputies found several more bags of meth along with a "meth pipe" commonly used for smoking meth and a little over $4,000 in cash scattered throughout the interior compartment. The total amount of meth recovered came to roughly 3.17 ounces.

Appellant was charged with possession of a controlled substance. Before the trial setting, appellant moved to suppress all "tangible evidence seized . . . in connection with" the investigation of his case and "any testimony . . . concerning such evidence." At a hearing on his motion, the trial court heard testimony from Deputies Siracasa and Male, summarized above, and from Lieutenant Jarvis, who provided Siracasa with his initial information that appellant had recently been spotted engaging in a number of drug transactions. Jarvis testified that he had been given this information by a confidential informant who had provided reliable information in the past.

After hearing this evidence, the trial court denied appellant's motion to suppress. Appellant pled guilty to the charged offense while reserving the right to appeal the trial court's denial his motion. The trial court sentenced appellant to five years in prison and this appeal followed.

## II. QUESTIONS PRESENTED

In three issues, appellant argues that the trial court abused its discretion in denying his motion to suppress because all evidence that he possessed drugs was the fruit of three allegedly illegal police actions: (1) stopping appellant's car without a reasonable suspicion

4

that he was engaged in criminal activity; (2) frisking him without a reasonable suspicion that he had a weapon; and (3) exceeding the permissible scope of a weapons search by reaching under his waistband and seizing the bags of meth hidden there.

### III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under this standard of review, we will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete deference in determining historical facts, while reviewing de novo its application of the law to those facts. *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). Where, as here, the trial court does not file findings of fact, we review the evidence in the light most favorable to the trial court's ruling. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

### IV. ANALYSIS

#### (a) Traffic Stop

Appellant first argues that the trial court erred in denying his motion to suppress all physical and testimonial evidence arising from the traffic stop because the police stopped him without a reasonable suspicion that he was engaged in criminal activity. Because the police stopped appellant without a warrant, the State had the burden at the suppression hearing of proving the reasonableness of the stop. *See Russell v. State*, 717 S.W.2d 7, 9–10 (Tex. Crim. App. 1986). A police officer may stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts and rational inferences from those facts, that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 29, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Woods v. State*, 956 S.W.2d

5

33, 35 (Tex. Crim. App. 1997). "This standard is an objective one: there need only be an objective basis for the stop; the subjective intent of the officer conducting the stop is irrelevant." *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001) (citing *Garcia v. State*, 827 S.W.2d 937, 943–44 (Tex. Crim. App. 1992)). "The information provoking the officer's suspicions need not be based on his own personal observations, but may be based on an informant's tip which bears sufficient 'indicia of reliability' to justify a stop." *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). The reasonableness of a temporary detention must be examined in view of the totality of the circumstances. *Woods*, 956 S.W.2d at 38.

Here, the police produced evidence that appellant was engaged in two types of criminal activity: drug-related and traffic-related.[1] *See Kelly v. State*, 331 S.W.3d 541, 549 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) ("An officer may stop and detain a person if the officer has reasonable suspicion that a traffic violation was in progress or had been committed."). The evidence that appellant was engaged in drug-related activity included the following: Jarvis told his deputies, including Siracasa, that appellant's truck was associated with drug dealing. Jarvis testified that his information was provided by a confidential informant who had provided reliable information in the past. *See Carmouche*, 10 S.W.3d at 328. Jarvis also provided the lieutenants with photographs of appellant. Siracasa and Male spotted appellant's truck and followed appellant to the Wal-Mart parking lot, where Male saw appellant pull into the middle of the parking lot—far from the store itself—get out of the truck, and rendezvous with a woman for about 15 seconds before leaving. Based on his experience, Male "thought [this] to be a narcotics transaction." Taken together, this evidence provided reasonable suspicion to conduct a stop to investigate drug-related activity.

The police also provided the following evidence that appellant had committed

---

[1] Appellant emphasizes that the deputies admitted they were "looking for a traffic violation" in order to stop appellant and investigate for drugs, but this is irrelevant because pretextual stops are permissible. *See State v. Gray*, 158 S.W.3d 465, 469–70 (Tex. Crim. App. 2005).

6

traffic violations justifying a stop: Deputy Male saw appellant make a "wide right" out of the Wal-Mart parking lot into a center lane of Navasota's main street. *See* TEX. TRANSP. CODE ANN. § 545.101(a) (West 2011) ("To make a right turn at an intersection, an operator shall make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway.").[2] Then, both deputies saw appellant veer left onto the highway from the right lane of the feeder road without using his left-turn signal. *See* TEX. TRANSP. CODE ANN. § 545.104(a) ("An operator shall use the signal . . . to indicate an intention to turn, change lanes, or start from a parked position."). Viewing this evidence in a light most favorable to the trial court's ruling and giving total deference to the trial court's credibility-based determinations, we conclude that the State met its burden of proving the reasonableness of the traffic stop—either for a drug-related or for a traffic-related infraction—and hold that any evidence resulting from that stop was admissible. We overrule appellant's first issue.

### (b) Weapons Search

Appellant next contends that the trial court erred in denying his motion to suppress all physical and testimonial evidence flowing from the weapons search because the deputies acted illegally in frisking him without a reasonable suspicion that he had a weapon. "Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous." *Carmouche*, 10 S.W.3d at 329. "However, '[t]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence.'" *Id.* (citing *Wood v. State*, 515 S.W.2d 300, 306 (Tex. Crim. App.

---

[2] Appellant argues that the police presented insufficient evidence that the turn he made was not as close as practicable to the right-hand curb, but Deputy Male testified that it was not. *See Hughes v. State* 334 S.W.3d 379, 384 (Tex.App.—Amarillo 2011, no pet.) ("We view this issue as turning upon the credibility of the officer's testimony about whether or not appellant made a wide right turn. . . . [W]e are cautioned to give almost total deference to the trial court's determination of historical facts that turn on the credibility of the witness.").

1974)).  Consequently, "the additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon."  *Id.* (citing *Terry*, 392 U.S. at 26–27, 88 S. Ct. at 1882–83, and *Worthey v. State*, 805 S.W.2d 435, 438 (Tex. Crim. App. 1992)).

Before commencing the patdown, Deputy Siracasa confirmed that appellant had several prior drug arrests.   Appellant also admitted as much when Deputy Siracasa asked him before the patdown.   Additionally, Deputy Male had just observed appellant engaging in what he believed was a drug transaction, and Deputy Siracasa had been told that appellant had recently been spotted engaging in a number of drug transactions.  *See id.* ("Since weapons and violence are frequently associated with drug transactions, the officers reasonably believed that the individual[ ] with whom they were dealing [was] armed and dangerous.") (citing *United States v. Brown*, 913 F. 2d 570, 572 (8th Cir 1990)). Appellant correctly argues that his status as a drug dealer would not alone have justified the weapons search,[3] but here there was other evidence supporting the police's reasonable suspicion that appellant had a weapon: Siracasa testified that appellant was "a little bit more [nervous] than I would suspect for just a normal little traffic stop" and that appellant reached into his pockets before the search began.  *See Kelly*, 331 S.W.3d at 549–50 ("[N]ervous behavior and furtive movements may constitute factors in determining reasonable suspicion.").   According to Deputy Male, this heightened the deputies' concerns for their own safety.   The Court of Criminal Appeals has also noted that

---

[3] *See Griffin v. State*, 415 S.W.2d 403, 411 (Tex. Crim. App. 2006) (op. on reh'g) ("Our opinion on original submission should not be characterized as holding that an objectively reasonable police officer may base a determination that his safety is in danger solely upon the basis that 'the suspect is a drug dealer.'").   In *Griffin*, the Court of Criminal Appeals cited as further justification for the search the fact that the officer knew that the appellant had been arrested for a drug offense a day or two before and "[a] reasonable police officer could believe that a suspect facing his second arrest on another felony drug charge in two days might be more likely to engage in violence to avoid this arrest."  *Id.* at 411 n.3.

8

"'roadside encounters between police and suspects are especially hazardous.'" *Id.* (quoting *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S. Ct. 3469, 3481, 77 L. Ed. 2d 1201 (1993)). Viewing the evidence in a light most favorable to the trial court's ruling, we conclude that it is sufficient to justify a weapons search of appellant's person.

Further, appellant had already consented to a search of his vehicle even before the weapons search, and inside his truck the police found a large amount of meth. *See Carmouche,* 10 S.W.3d at 331 ("Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause."). Appellant does not contest the voluntariness of this search. Thus, even if the weapons search had been impermissible, the admission of the meth found on appellant's person would have been harmless due to the independent evidence recovered from appellant's truck.[4] We conclude that the trial court did not abuse its discretion in admitting the evidence seized as a result of the weapons search and overrule appellant's second issue.

### (c) Scope of Weapons Search

Finally, appellant argues that the trial court erred in denying his motion to suppress all physical and testimonial evidence resulting from the weapons search because the police exceeded the permissible scope of the weapons search by reaching under his waistband and seizing the bags of meth hidden there. A police officer in a public place has the authority, even without a warrant, to seize anything he has probable cause to believe constitutes contraband. *State v. Dobbs*, 323 S.W.3d 184, 187 (Tex. Crim. App. 2010). "If the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry,* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S. Ct. 2130, 2136, 124 L. Ed. 2d 334 (1993). However, when "a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the

---

[4] Appellant does not argue that the meth found under his waistband added to the total in a way that affected his conviction or punishment.

9

suspect's privacy beyond that already authorized by the officer's search for weapons." *Dickerson*, 508 U.S. at 375, 113 S. Ct. at 2137.

Appellant argues that because Deputy Siracasa, who conducted the patdown, had never investigated drug-possession cases before, he did not immediately recognize that the lump he felt under appellant's waistband was meth. Therefore, by reaching into appellant's waistband, Deputy Male exceeded the valid scope of Deputy Siracasa's search. However, Deputy Siracasa testified that when he asked appellant what the lump was, appellant told him, "Go ahead, you can go in there and get it. It's speed." Appellant thus consented to the search, and also provided probable cause to believe that the lump was in fact contraband. *See Dickerson*, 508 U.S. at 377, 113 S. Ct. at 2138 ("The seizure of an item whose identity is already known occasions no further invasion of privacy."). Further, as noted above, appellant had already consented to a search of his vehicle even before the weapons search. This search yielded evidence that independently supported appellant's conviction. Appellant does not contend that his consent to either the drug seizure or the vehicle search was involuntary. Thus, even if the search had exceeded the valid scope of a weapons search, the admission of the meth found on appellant's person would have been harmless.

We overrule appellant's third issue.

## IV. CONCLUSION

Because the trial court did not abuse its discretion in denying the motion to suppress, we affirm the trial court's judgment.

/s/     Tracy Christopher
         Justice

Panel consists of Justices Boyce, Jamison, and Christopher.
Do Not Publish — TEX. R. APP. P. 47.2(b).